JACKSON, ex dem. BULKLEY, *vs.* DELACROIX.

THIS was an action of ejectment, tried at the New-York circuit in April, 1827, before the Hon. WILLIAM A. DUER, one of the circuit judges. The declaration contained a number of counts, on the demise of Uriah Bulkley against Joseph Delacroix, some of which were laid on the 17th May, 1825, and others on 21st November, 1825. The premises demised were variously described : as, "one house, one messuage, one cellar and one acre of land, situate in the first ward of the city of New-York ;" " so much of the first story of that certain house, standing on a certain lot of land situate in the first ward, &c. known as No. 112, Broadway, as lies on the south side of the hall running through the said first story ;" "the front cellar under that part of the house, &c. known, &c. which lies on the south side of the hall, &c. and also the hall, and also the yard in the rear of the house ;" and "all that certain store, being on the south side of the hall, &c. and also the front cellar under the said store, and the privilege of passing through the hall into the yard in the rear of the store, as appurtenant thereto."

On the trial of the cause, the plaintiff produced an instrument in writing under seal, bearing date 16th February, 1825, executed by the defendant and Marie his wife, by which, after reciting "that it had been agreed by and between Delacroix and Bulkley, that Delacroix should alter and improve the premises known as No. 112, Broadway, in the city of New-York, in the manner afterwards to be particularly described, and that Delacroix should lease unto Bulkley the first story of that part of the premises which, after the said alterations and improvement, would be south of the hall afterwards to be described, for and during the term afterwards to

*Whether an instrument shall be considered a lease, or only an agreement for a lease, depends on the intention of the parties to be collected from the whole instrument; the law will rather do violence to the words, than break through the intent of the parties, by construing it a lease, when the intent is manifestly otherwise.*

*An instrument respecting the letting of premises, though containing words of present demise, but in which was inserted an agreement by the owner to make alterations and improvements, and by the other party to take a lease when the premises should be so altered and improved, and the term was stipulated to commence from the day that the premises*

should be altered and improved in the manner agreed on, was accordingly held not to be a lease, but *an agreement for a lease.*

And where, under such an agreement, alterations and improvements were made, but of a different character from those stipulated, it was held, that the party with whom the contract was made, was not entitled to demand the possession of the premises, though willing to waive the exact compliance with the contract.

NEW-YORK,
May, 1829.

Jackson
v.
Delacroix.

be mentioned, at the rent of $865 per annum, and which lease Bulkley had, on his part, agreed to take from Delacroix, when the premises had been so altered and improved," Delacroix, for and in consideration of the rents, covenants and agreements thereinafter reserved and contained, on the part and behalf of the said Uriah Bulkley, his executors, &c. to be paid, kept and performed, covenanted and agreed, on or before *the fifteenth day of May* (then) *next*, to alter and improve a certain two story house, situate in Broadway, in the city of N. Y. by making a hall not more than six feet wide in the clear, to run through the middle of the house from front to rear, by raising the front of the house so that it should present, in front, the appearance of a full three story house, by making the first story of the south part of the house to be divided into a store of not less than 15 feet front and rear, and *to extend from the front to the rear of the house*, (describing the style of finishing,) by lowering the cellar under the front half of the store, flooring the same, making suitable steps to descend from the street, and making a new cellar door, by removing all the buildings on the lot in the rear of the house, so as to leave a vacant space of 18 feet ; and that he and his heirs would not, "during the continuance of the term hereby granted," erect on any part of the lot in the rear of the store and yard, any building, other than a building to be used as an assembly room.    After this covenant the instrument proceeds as follows : " And the said Joseph Delacroix and Marie his wife, do also by these presents grant, demise and to farm let unto the said Uriah Bulkley, and to his executors, &c. all the said store, so to be built and improved as is hereinafter mentioned, together with the said front cellar, the same to extend back about 22 feet, and also the free privilege, in common with the tenant of the upper part of the house, of the said hall and yard, for egress and regress, (provided that the said Joseph Delacroix should be permitted to take a space not more than fourteen feet in length, and four and a half feet in breadth, from the rear part of the north side of the store, for the purpose of constructing a flight of stairs to communicate with the hall.)    To have and to hold the said abovementioned and described store, cellar and privilege,

with the appurtenances, unto the said U. B. his executors, &c. *from the day that the said store and cellar shall be altered and improved in the manner abovementioned,* until the first day of May, which will be in the year 1832 ; yielding and paying unto the said J. D. his heirs, &c. the yearly rent of $865 in quarterly payments." Then follows a proviso, that a deduction from the first quarter's rent *pro rata* should be made, for the time that should elapse between the 1st May, 1825, and the alteration and improvement of the store and cellar ; clauses of re-entry and distress ; a covenant on the part of D. to pay all taxes, &c. during the term "hereby granted," and to keep the demised premises in tenantable repair. If, however, the premises were destroyed by fire, the indenture was to be void, and the estate granted to cease ; and covenants on the part of B. to pay the rent, and to yield up the premises on the determination of the estate, in as good order and condition as they should be on the day the possession thereof should be given unto him, reasonable wear and tear excepted ; closing with a covenant on the part of D. for quiet enjoyment, B. paying the rent, &c.

The plaintiff further proved that the defendant was the *owner* of the premises ; that at the date of the instrument produced by him, he, the defendant, was in possession of part of the premises as a tenant of one George Dummer, for the then current year, ending on the 1st May, 1825 ; that on or before the 1st May, he delivered up to the defendant the possession of the premises to be repaired and altered, according to the covenants in the instrument contained ; and that before the commencement of this suit, to wit, on the 20th November, 1835, at which time, the building now erected on the premises was completed, he, the plaintiff, demanded of the defendant the possession of the premises in question, which was refused by the defendant. The plaintiff rested.

The defendant proved that in May, 1825, he took possession of the premises, for the purpose of altering and improving the same, according to the agreement between him and the plaintiff, but it was found that the old building was so much damaged and the foundation of it so weak that the alterations and improvements specified in the instrument could

not be made with safety; in consequence whereof, the old brick building then standing on the premises, described in the instrument as a two story building, was entirely taken down, and a new and deeper foundation laid, upon which was erected a four story brick building of the same width of the old building, but about seven feet deeper, which, at the time of the trial, was standing upon the premises called and known as the National Hotel; that the new building is divided in the middle on the first or ground floor by a hall six feet wide, running from front to rear; that on the south side of the hall, the first floor is from 14 to 15 feet wide in front and rear, and in the front, on the south side of the hall, a room is constructed, which is entered by a door from the street, and by another from the hall; that in the rear of this room, and across the south side of the first floor, a stair case about seven feet wide, leading from the hall into the second story, has been erected, and that in rear of the stair case, on the south side of the hall, a parlor has been made; that the cellar under the front room, on the south side of the hall, has been lowered and paved, and a door and flight of steps to the side walk in front has been made.

The testimony being closed, the judge charged the jury that the evidence produced was sufficient to bar the plaintiff of his action, and to entitle the defendant to a verdict. The jury found accordingly. The counsel for the plaintiff excepted to the charge of the judge.

*P. Ruggles*, for plaintiff, moved to set aside the verdict. The instrument executed by the defendant is a lease; by it, a term for years was granted, and an interest in the demised premises vested in the lessee, the possession to commence *in futuro*. (*Co. Litt.* 46 b. 2 *Black. Comm.* 144. 6 *Co.* 37.)

The lessee was to *have* the premises from the day that the store and cellar should be altered and improved, as specified in the lease. It cannot be objected that the estate of the lessee had no beginning, and that therefore the lease is void. Whatever uncertainty existed is removed by the terms of the lease itself. The alterations and improvements were to be made by the *fifteenth day of May*, 1825, (fifteen days after the termination of the term under the lessee's then existing lease.) The

commencement of the term being thus certain could not be rendered uncertain, or the lease vacated by the acts of the lessor. A party cannot allege his own neglect or omission in excuse of the performance of a covenant. (5 *Cowen*, 270. 10 *Vesey*, 315, 16. 11 *Johns. R.* 91. 14 *id.* 193.) If the commencement of the term depended upon the time when the alterations were completed, the plaintiff's right of entry accrued on the 20th November, 1825, when the alterations were all made. If the term commenced on the 1st May or the 15th May, and the lessee was prevented from entering by the alterations not being then completed, he was entitled to enter when the impediment to his entry was removed. (*Co. Litt.* 45 b, 46 b. 4 *Bacon's Abr. tit. Leases, L. O.* 4 *Com. Dig. tit. Estates, G.* 9. *Co. Litt.* 227 a.)

NEW-YORK, May, 1829.

Jackson v. Delacroix.

The instrument contains not only words of present demise, but an entry is contemplated by the reservation of the right of re-entry. The alterations made, though variant from those specified in the lease, in every material particular are the same. The room is there, the cellar is there, and whether in a new or in an old house, is immaterial, the lessee being willing to accept the premises. He had no power to control the lessor in the making of the alterations.

The remedy of the plaintiff is by ejectment, and not by suit on the covenant. (5 *Johns. R.* 74.) Whatever is tangible can be recovered in an ejectment. (16 *Johns. R.* 184. 9 *id.* 298.) An action of covenant could not be sustained; it could not be alleged that the defendant had not executed a lease.

*A. Van Vechten,* for defendant. The instrument relied on by the plaintiff for a recovery is not a lease, but an agreement for a lease. The defendant agreed to demise a store *to be built* and improved in a certain manner by making certain alterations, and when those alterations were made the term was to commence. They were never made. The subject matter of the agreement consequently never had existence. The intent of the parties must govern in the construction of the instrument, and the words must yield to the

intent. (*Adams on Eject.* 109 to 111. 1 *Cruise*, 116, *tit.* 23, *ch.* 7, § 4.)

The agreement contemplated the commencement of the term on the completion of the alterations, which it was supposed might be effected in 15 days; but they could not be made in consequence of the decayed state of the building. The disappointment was mutual and without fault on either side ; the agreement could not be carried into effect; the subject did not admit of it. Had the alterations been made as had been agreed upon, and it would have been unsafe to occupy the room, the plaintiff would not have been bound to accept it. The defendant therefore was released from his agreement.

Of what could possession be delivered in case of recovery by the plaintiff ? There is nothing of the old house left, and the new building was not erected at the time of the agreement ; a room in it therefore could not have been demised. There was no demise of the ground covered by the store, so that the party might claim whatever building was put upon it. It was of a room in a house which was to be altered and improved, and which was found impossible to be done. To compel the defendant to furnish to the plaintiff a store in the new building, worth perhaps double the rent specified in the agreement, in lieu of a store in the old building, would be contrary to the contemplation and intent of the parties when the agreement was entered into. If the instrument is to be considered as a lease binding upon the defendant, then it would have been equally obligatory upon the plaintiff, though the alterations made had decreased instead of enhanced the value.

*By the Court,* Savage, Ch. J. The important question in the case is, whether the instrument produced is a lease or an agreement for a lease ? Any words which import a present demise are sufficient to constitute a lease. The words demise, lease, and to farm let, are the proper ones to constitute a lease ; but any other words which shew the intention of the parties that one shall divest himself of the possession and the other come into it for a certain time, whatever be the form, will, in construction of law, amount to a lease. (*Cruise's*

*Dig. tit.* 32, *ch.* 5, § 3 *to* 13.) Some of the cases referred to shew, that if the instrument contains words which import a present grant, they constitute a lease, although there is a stipulation for a further conveyance in future. It has been supposed that all the English cases on this subject have not been uniform. (5 *T. R.* 163, *Law, arguendo,* where the cases are referred to, and see *Cruise, ubi supra.*) But the rule now settled there, as well as here, is, that whether the instrument shall be considerd a lease, or only an agreement for one, depends on the intention of the parties as collected from the whole instrument. The law will rather do violence to the words than break through the intent of the parties by construing it a lease when the intent was manifestly otherwise. (*Cruise, ubi supra,* § 9.)

Among the cases which I have examined, that which most resembles this is *Doe* v. *Ashburner,* (5 *T. R.* 163.) Jackson, the lessor of the plaintiff, had entered into an agreement with Scarisbrick, who became bankrupt, and the defendant was one of his assignees. It was agreed, as to the fulling mills, &c. of the lessor, that the said mills and conveniences, &c. he (the lessee) *shall enjoy,* and I (the lessor,) engage to give him a lease in, for the term of 31 years, &c. The lessor then agrees to purchase one yard in breadth to be added to the race ; a building was to be moved, and other covenants on both sides were contained in the agreement. The court were of opinion that the words *he shall enjoy,* if unrestrained, would be a perfect lease, but that they were qualified by the words, *and I engage to give him a lease.* Lord Kenyon says, " But as the parties agreed, the one to give and the other to receive a future lease, I cannot conceive that this was intended to be a present lease." He lays stress upon the agreement to purchase an additional piece of ground, without which he infers the lease was not to be granted, and that a further lease was contemplated by the parties. Ashurst, J. concurred, and among other things added, that where the words do not necessarily imply a present demise, and where possession is not given, and there is no other act to manifest such intention, then it is merely an executory contract. He adds, " Besides, the rent is agreed upon at

all events ; and if this were construed to be a lease, the land-lord would have a right to distrain for the whole rent, al-though the addition were not afterwards made by purchase, and the only remedy left to the tenant would be by an action at law or bill in equity." Grose, J. concurs that the question was one of intention, and says, "Now, considering the place as it existed at the time of the agreement, and as it was to exist afterwards, the dates and the quantum of rent, I do not think that it was intended to give a present interest.

The cases in this court assume the same principle. In *Hallett* v. *Wylie*, (3 *Johns. R.* 47,) Van Ness, J. says, whether the contract should be considered a lease or only an agreement for one, must depend upon the intention of the parties to be collected from the whole of the instrument. In that case the plaintiff had agreed to let and the defendant to take a house at a certain rent, and the defendant took possession and held it till the house was burnt. There was nothing to shew that the parties contemplated any further assurance ; and the words implying a present demise, the court held it an executed contract. The case of *Thornton* v. *Payne*, (5 *Johns. R.* 74,) was an action of covenant for not giving possession of a farm according to contract. The defendant bargained, covenanted and agreed with the plaintiff that he would let and hire to him a certain farm, &c. specifying the terms, rent, conditions, &c. The court held that this was a lease, and not an agreement for one. Spencer, J. says that the [intention of the parties must govern and be sought for from the whole instrument. In the case of *Jackson*, *ex dem. Livingston*, v. *Kisselbrack*, (10 *Johns.* 336,) the lessor had given the defendant an instrument or memoran-dum, in which he used the terms *hath let and to farm let ;* the defendant took possession under it, and occupied seve-ral years before suit brought. It was agreed in the memo-randum that the premises should be surveyed, and then the defendant should take a lease. Spencer, J., in giving the opinion of the court, reviews many of the English cases, in which there were words of present demise, and a covenant for further lease. superadded, and the court considered the instrument as a lease, and he comes to this conclusion :

" that there is no case of a present demise by apt words, *followed by a possession,* in which the instrument has not been held *to* pass an immediate interest." There are some cases, however, where possession did not follow, in which the instrument was considered an agreement for a lease merely, notwithstanding words of present demise, as I have already shewn. From all the cases, there is nothing to impugn the proposition that the intention of the parties must control, and that intention must be collected from the whole instrument.

What was the intention of the parties on the 16th February, 1825, the date of the instrument? Was it intended by that instrument to pass a present interest? Did the lessor of the plaintiff intend to be responsible at all events upon his covenant to pay the rent? If such was his intention, why agree to receive a new lease after the repairs were made? There can be no question but what the instrument between the parties contains words of present demise, but it is also a perfect lease to take effect *in futuro* upon a subject which was to be created. The instrument commences by reciting that it had been agreed that the premises should be improved by the present defendant, and let to the lessor of the plaintiff upon a certain rent, " which lease the said U. B. hath on his part agreed to take from the said J. D. *when the said premises shall be so altered and improved.*" The instrument specifies all the improvements, and then follows a regular formal lease to hold from the time when the improvements shall be completed till the 1st May, 1832, with a covenant for the payment of the rent quarterly, and clauses of distress and re-entry. The improvements contemplated by the written contract between the parties, and upon the completion of which the term was to commence, have never been made. The habendum clause is as follows : " To have and to hold the said above mentioned and described store, cellar and privileges, with the appurtenances, unto the said U. B. his executors, administrators and assigns, *from the day that the said store and cellar shall be altered and improved in the manner above mentioned.*" That day has not arrived ; the store and cellar have not been improved in the manner agreed upon. A new building

has been erected, and the store as contemplated cannot be found in the present building without tearing down two partitions and a stair case, and building a new partition. It is said that the lessor is at liberty to waive the exact compliance with the contract, and if he is willing to take the premises as they are, the defendant cannot object; but that argument seems to me to conclude nothing on the question whether the instrument is a lease or only an agreement for a lease. If it was a lease, and so understood by the parties, it was obligatory upon both parties, and, of course, the lessor was bound to pay rent from the time when the premises should be altered in the manner proposed. Suppose the defendant had put an ice house on the ground upon which the store was to be erected, or, suppose the house had fallen down and been permitted to remain a heap of ruins, could the lessor be compelled to pay rent? If an action should, under such circumstances, be brought upon the covenant to pay rent, would it not be a perfect answer to say, the term was not to commence until the premises were altered and improved in the manner mentioned in the instrument, by virtue of which rent is claimed, and, as the premises have never been so improved, no rent has accrued? This view of the subject is conclusive to my mind to shew that the instrument was not considered by the parties or intended by them as a lease, but an agreement for a lease, settling the terms upon which the premises, when altered, should be held. There was something to be done before the lease was to be executed: the store was to be altered and improved in a manner materially variant from the building which has been erected. The contract has not been fulfilled on the part of the defendant, and it seems to me, therefore, that whatever liability rests upon the defendant for a breach of his covenant, the remedy of the lessor of the plaintiffs is not in this form of action.

Judgment affirmed.