Long Island Rail Road Company *v.* Conklin.

The judgment should be affirmed.

[ORANGE GENERAL TERM, September 10, 1860. *Lott, Emott* and *Brown,* Justices.]

32b 381
11ap433

## THE LONG ISLAND RAIL ROAD COMPANY *vs.* CONKLIN and others.

D. and his wife, by their deed of conveyance, for a valuable consideration, granted, bargained and sold to the Long Island Rail Road Company, and to their successors and assigns forever, a certain piece of land therein particularly described, comprising an area of sixty square rods, expressing it to be "for the uses and purposes of the road proper." "Also, in addition to which 60 square rods, the Long Island Rail Road Company *may be* further entitled to an extra additional width of 70 feet on the south side of the said rail road, for the uses and purposes of a side track, engine house, depot, or such buildings and appendages to said road as may be considered necessary; provided such buildings may be used for the purposes of said road only, and which additional land contains an area of 64 square rods, more or less;" *habendum* "all and singular the above mentioned and described premises to the Rail Road Company, their successors and assigns forever;" with the usual covenant of warranty. *Held* that the purpose of the grantors, in inserting the words "may be," in the clause relative to the second parcel of land described, appearing, from an examination of the whole instrument, to have been to vest the title to that parcel in the grantee, the words "may be," might be read "shall be:" the court not being bound to adhere to the literal and grammatical sense of the words used.

And that, inasmuch as by the terms of the deed, the grantees were to take and enjoy the first described lot for the uses of the road proper, and the second described lot for the uses of a side track, engine house and depot, and whatever was granted in the premises of the deed was, by the habendum, to be held in fee, with a covenant of warranty, it was the intention of the grantors to pass the title to both parcels of land described in the deed; and such was its legal effect.

Where the grammatical sense of the words is not in harmony with the obvious intention of the parties, the courts do not hesitate to substitute one word for another, for the purpose of giving effect to such intention. *Per* BROWN, J.

APPEAL from an order made at a special term, denying a motion for a new trial. The action was for the recovery of real estate.

*Miller & Tuthill*, for the plaintiff.

*J. Lawrence Smith*, for the defendants.

*By the Court*, BROWN, J. The plaintiff's complaint in this action was dismissed at the trial at the Suffolk circuit, in October, 1859, upon the ground that it showed no title or right of possession to the lands and premises which it claimed to recover. The plaintiff was not entitled to a verdict unless it had a valid subsisting interest in the premises claimed and a legal right to the possession thereof, at the time of the commencement of the action. It appeared that one Edward Dodd, on the 28th of December, 1841, was the owner in fee of the premises described in the complaint, together with other lands adjoining the same. By his deed of conveyance bearing date on that day, executed in proper form by himself and wife, of the first part, and the Long Island Rail Road Company of the second part, and for and in consideration of the sum of one dollar, he granted, bargained and sold, aliened, released, conveyed and confirmed unto the Long Island Rail Road Company, and to their successors and assigns forever, " all that certain piece of land situate and being in the town of Huntington and county of Suffolk, bounded as follows : commencing at a point on the road leading from Dix Hills to Babylon, commonly called the straight path, where the second division of the Long Island rail road crosses the same, and thence along said rail road, the center line of which bears north seventy-nine degrees east a distance of 250 feet, and which said line of road is to have a uniform width of four rods, for the uses and purposes of the road proper, and comprises an area of sixty square rods. Also, in addition to which sixty square rods, the Long Island Rail Road Company

may be further entitled to an extra additional width of seventy feet on the south line of said rail road, for the uses and purposes of a side track, engine house, depot, or such buildings and appendages to said road as may be considered necessary, provided such buildings may be used for the purposes of said road only, and which additional land contains an area of sixty-four square rods, more or less;" together with the tenements, appurtenances, &c.; and also all the estate, right, title, interest, dower, right of dower, property, possession, claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in and to the same, &c. Habendum, all and singular the above mentioned and described premises to the Rail Road Company, their successors and assigns forever; with usual covenant of warranty. The action was brought by the plaintiff to recover the possession of the lot last described in the deed. It also appeared in the evidence, that the railway of the company was laid upon the piece of land first described in the deed, in 1842, for which purpose it had been since occupied by the plaintiff. That at the same time an engine house was built on the tract last described in the deed, and also a turn-out track. These erections remained about one year, when they were removed further east to the Suffolk station. This lot had been occasionally used since that time by the company for depositing wood. A tool house was also built by the company upon a part of the lot, and also a house for storing paper, and part of another engine house was put upon it in 1844, and continued there until 1854. After the evidence was closed, the defendants insisted that the plaintiff showed no title and no right to the possession, and that in respect to the seventy feet on the south side of the rail road, the deed conveyed no present interest in the premises, and that the legal title, notwithstanding the deed, still remained in the grantor or those claiming under him. And in this view the court concurred, and so ordered the complaint to be dismissed. The only question, therefore, to be considered, is the construction to be

given to the deed; and we are to say whether it was effectual to pass the title to the seventy feet of land to the grantee therein named.

The language of the deed, in regard to the premises in dispute, is peculiar, and widely dissimilar from that in regard to the lot first described for the principal track of the road. In respect to the latter the words are technical and artistical, and such as long usage and the best skill has selected and appropriated to the conveyance of titles to real property; while those in regard to the seventy foot lot are neither apt nor appropriate, nor such as are usually employed in deeds for the transmission of titles to real property. If the question is to be determined upon the grammatical and literal sense of the words employed in the deed, it would be impossible, I think, to say that the words " may be further entitled to the extra additional width of seventy feet on the south side of said rail road," would have the effect to pass the title from the grantor to the grantee; for they do not express an absolute intention to pass a present estate at that time, in the premises. This deed is not, however, to be construed and its effect upon the title determined by looking at these words alone, nor by adhering to their strict grammatical import. But we are to ascertain, if we can, what was the intention of the parties to the deed; and this can only be done by examining and considering all parts of it. Where the grammatical sense of the words is not in harmony with the obvious intention of the parties, the courts do not hesitate to substitute one word for another for the purpose of giving effect to such intention. This rule of construction applies to deeds and wills and also to statutes. *Jackson* v. *Blanshan*, (6 *John.* 54,) is an example of what the courts will do under such circumstances. The question was upon the construction of a will. The testator had devised his real property to his six children, with this limitation: " But if any one or more of my above named children should die before they arrive to full age, or without lawful issue, that then his, her or their part or share

Long Island Rail Road Company *v.* Conklin.

of my estate shall devolve upon and be equally divided among the rest of my surviving children." Mathew, one of the sons, died without lawful issue, after he was of full age, and after he had parted with the estate by a title under which the defendants held, leaving the lessor of the plaintiff the only surviving child of the testator. The court held the devise to Mathew absolute as soon as he became 21, though he had no lawful issue, and that the words " or without lawful issue " should read " and without lawful issue;" thus substituting one word for another, to give effect to the intention of the testator as collected from the entire instrument. Chief Justice Kent reviews and refers to all the English authorities, which it seems had been in conflict. *Jackson* v. *Topping*, (1 *Wend.* 388,) was a case of the same kind, and arose upon the construction of a deed. The deed contained a covenant on the part of the grantee that he would pay all the debts outstanding against the grantor, and would keep him harmless and indemnified from all such debts, and from all actions, suits and damages that might arise from the non-payment thereof. Then followed the condition upon which the question arose, that if the grantee should neglect or refuse to pay and fulfill all the covenants and conditions contained in the deed, and should suffer the grantor to be put to any costs, trouble or expense on account of the same, or should neglect or refuse to provide for him a maintenance in the manner specified in the deed, then in all or either or any of the cases aforesaid, it should be lawful for the grantor to re-enter and repossess and enjoy his former estate, &c. The material question was whether, in order to create a forfeiture of the estate, there must be both a refusal to pay the debts and proof that the grantor was put to costs, trouble and expense; in short, whether the word " and " was to be construed as a copulative or a disjunctive. In its literal and grammatical sense it was the former, doubtless ; and so construed, both the neglect to pay the debts and subjecting the grantor to the payment of costs by reason thereof must concur in order to

work a forfeiture of the estate.  The court held otherwise, however, determining that the word " and " must be read as the disjunctive " or;" and so awarded the estate to the heir at law of the grantor.  It is true that Mr. Justice Woodworth, who delivered the opinion, inclines to think that to create a forfeiture during the lifetime of the grantor, both contingencies must happen, but after the death the contingency of neglecting to pay the debts would be enough.  But this view also resulted from the intention of the grantor manifested in the deed, and not from adhering to the literal sense of the words.  For after alluding to the English cases, and the case of *Jackson* v. *Blanshan*, he says,  " There being then no doubt that the word ' and ' is not confined to the grammatical sense, but may be read as ' or,' so as to put the right of entry in the disjunctive, it only remains to consider whether the plain intent of the grantor was not that it should be so considered.  I think this is manifest from the whole instrument."  A similar rule is to be observed in the construction of statutes.  In *Blackwell's case*, (1 *Vern.* 152,) it was held that the words of an act of parliament which declared that the chancellor may grant a commission of bankruptcy, was to be construed as imperative; that the word "may" in effect meant " must."  In *Rex* v. *Barlow*, (2 *Salk.* 409,) it is said that when a statute directs the doing of a thing for the sake of justice, or public good, the word may is the same as shall.  (*See also The Newburgh Turnpike Co.* v. *Miller*, 5 *John. Ch.* 112; *Malcom* v. *Rogers*, 5 *Cowen*, 188.)

This deed, like all similar instruments, is to be construed most strongly against the grantor.  " For the principle of self interest will make men sufficiently careful not to prejudice their own interest by using words of too extensive a meaning."  (4 *Cruise's Dig.* 417, § 7.)  The words of bargain and sale, granting and conveying, in the present deed, must be held to apply to the several parcels of land therein described, unless they are limited or qualified by subsequent words.  The words which are thought to qualify and limit the effect

of the granting part of the deed are those which immediately precede the description of the premises last described; that is, " The Long Island Rail Road Company may be further entitled to" &c. These are not qualifying words, nor are they words of limitation, in any sense. The most that may be said of them is, that they are inartificial and not the most appropriate to the purpose of granting an estate in lands. But they were put into this deed for some purpose, and to effect some object; and if that appears from an examination of the whole instrument to have been to vest the title in the company, then, upon the rule of construction to which I have referred, the words " may be " can be read " shall be," so that the sentence would read " The Long Island Rail Road Company shall be further entitled to an extra additional width of 70 feet on the south side of the rail road," &c. To declare in a deed of conveyance to a rail road corporation, in the usual form, after the description of one lot by metes and bounds, for the uses and purposes of the road proper, that the corporation shall also be entitled to an additional lot, describing it also by metes and bounds, for the use and purposes of a side track, engine house, depot, &c. would certainly be a very clear and unequivocal manifestation that the corporation should take some interest or estate in the lot last described; for without some estate or interest the company could not apply it to the uses and purposes of the side track, engine house and depot, mentioned in the deed. The quantity of interest and the nature of the estate does not depend upon the words to which I refer, but upon the habendum clause, which I will look at presently. The instrument we are examining is not a contract to convey at a future time. It is a deed of bargain and sale, and nothing else. And if the description of the lot with the words to which I have referred, were not inserted in the deed for the purpose of giving the rail road company a title, it is impossible to say what object the parties had in view; for none other can be attributed to them. In *Doe* v. *Ashburner*, (5 *T. R.* 163,) the question

was whether a particular instrument should operate as a lease, or an agreement for a lease. The particular words were, "He shall enjoy and I engage to give him a lease," &c. Lord Kenyon held that if the former words had not been restrained by the engagement to give a lease in future, they would have operated as a perfect lease; but as the parties agreed, the one to give and the other to receive a future lease, I cannot conceive that this was intended to be a present lease." He says that "whether the particular agreement should be considered a lease, or merely an agreement for a lease, must depend upon the intention of the parties as it is to be collected from the whole agreement. The case cited from *Cro. Car.* was properly decided. There the words were ' the defendant shall have and enjoy,' &c. without any others to qualify the expression. Those words were sufficient to give the legal interest; they would be operative in a bargain and sale or in a covenant to stand seised to uses." (*See also Jackson* v. *Delacroix,* 2 *Wend.* 433.)

The habendum is resorted to for the purpose of ascertaining the nature and quantity of the estate which the grantee takes in the lands granted in that part of the deed technically known as the premises; for its proper office is to limit the certainty of the estate granted. "Nothing can be limited in the habendum of a deed which is not given in the premises, because the premises being the part of a deed in which the thing is granted, it follows that the habendum, which is only used for the purpose of limiting the certainty and extent of the thing given, cannot increase the gift, for then the grantee would in fact take a thing which was never given to him." (*Cruise's Dig.* vol. 4, *p.* 432, § 48.) The same observation may be made of the covenant of warranty. Its effect is limited expressly to assure the title of the grantee to the lands granted in the premises of the deed; for it would be absurd to make such a covenant in respect to lands the title to which still remained in the grantor. But both the habendum and the covenant of warranty are material in considering the inten-

tion of the parties to the deed; for they afford very forcible evidence that it was the intention of the parties to pass the title and make a conveyance *in presenti*. Seeing therefore that we are not to adhere to the literal and grammatical sense of the words which apply to the lot last described in the deed, but that we may ascertain and give effect to the intention of the parties by an examination of the whole instrument; seeing also that by the terms of the deed the company were to take and enjoy the first described lot for the uses of the road proper, and the second described lot for the uses of a side track, engine house and depot, which are the principal uses for which rail road corporations acquire real property, and that whatever was granted in the premises of the deed was by the habendum to be held in fee, with a covenant of warranty, I think it was the intention of the grantors to pass the title to both parcels of land described in the deed, and that such is its legal effect.

The order made at the special term, denying the plaintiffs' motion for a new trial, should be reversed, and a new trial granted, with costs to abide the event.

[ORANGE GENERAL TERM, September 10, 1860. *Lott, Emott* and *Brown,* Justices.]