92    341
s102   6428

JOHN DONOVAN, Appellant, v. P. SCHOENHOFEN BREWING COMPANY, Respondent.

**Kansas City Court of Appeals, February 10, 1902.**

1. **Frauds and Perjuries:** LEASE: WITHIN THE YEAR. An agreement for a lease for more than one year must be in writing, but if the agreement and the lease are to be performed within a year they need not be in writing.

2. ———: ———: CONSTRUCTION. A lease for one year with the privilege of renewal for one or more years on certain notice is for a greater term than one year and an agreement to take such a lease should be in writing.

3. ———: ———: WRITING. After a verbal agreement plaintiff prepared a written lease and sent to defendant for its signature. Defendant returned it by letter saying it did not contain the agreement and stating what the agreement was and agreed to sign a lease embodying such agreement. Plaintiff accepted by telegram. *Held,* sufficient under the statute of frauds.

4. ———: ———: PRINCIPAL AND AGENT: CORPORATION. A written contract for a lease for more than one year signed by an agent not authorized in writing is non-enforcible, but this rule does not apply to the general agent of a corporation acting within the limit of his authority, his act being the act of the principal acquires no authority in writing.

5. ———: ———: AGREEMENT TO LEASE: INTENTION: EVIDENCE. Whether a writing is a lease or a mere agreement to lease is often difficult and depends upon the intention of the parties which will overcome mere words that standing alone would have an opposite meaning, and a writing under the evidence is held to be an agreement to lease *in praesenti.*

6. **Statute of Frauds: SIGNED WRITING: UNSIGNED WRITING: PLEADING: VARIANCE.** An unsigned writing acknowledged in a signed writing as the agreement, satisfies the statute of frauds; or one unsigned and one signed, each expressing a part, may together make up the whole agreement if the latter acknowledges the former and the variance between the pleading and the proof in this case does not constitute a failure of proof and not being objected to, is not fatal.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

REVERSED AND REMANDED.

*Brown & Dolman* for appellant.

(1) An agreement to make a lease may be enforced either by bill in equity for specific performance or by action at law for damages. 1 Taylor's Landlord and Tenant (8 Ed.), sec. 37. (2) The question whether a contract will be construed as a lease or an agreement to make a lease is one of construction, and depends upon the paramount intention of the parties. Jackson v. Delacroix, 2 Wend. 433; Jackson v. Monarief, 5 Wend. 26. (3) The plea that the contract sued on is not in writing signed by the defendant or his agent thereunto lawfully authorized, raises the question, first, whether the contract sued on is required by the statute of frauds to be in writing, and second, whether it is in writing (R. S. 1899, sec. 3414). Tillman v. Fuller, 13 Mich. 113; Young v. Duke, 5 N. Y. 463. (4) The written proposition contained every detail of the contract excepting a description of the land. Christensen v. Wooley, 41 Mo. App. 53; Black v. Crowther, 74 Mo. App. 480; Allen v. Chouteau, 102 Mo. 309; Hall v. Bank, 145 Mo. 418; Welsh v. Brewing Co., 47 Mo. App. 612; 1 Taylor's Landlord and Tenant (8 Ed.), sec. 35. (5) And where the memorandum consists of separate letter acknowledging the unsigned agreement it is sufficient.

Ibid. Mastin v. Grimes, 88 Mo. 478; Cunningham v. Williams, 43 Mo. App. 629; Christensen v. Wooley, 41 Mo. App. 53; Boeckeler v. McGowan, 12 Mo. App. 507.

*Culver & Phillip* for respondent.

(1) Whether a contract for letting is a lease or a mere agreement for a lease, depends upon the intention of the parties, and such intention is to be gleaned from the contract itself and the surrounding circumstances. Western Boot & Shoe Co. v. Gannon, 50 Mo. App. 642; Bacon v. Bowdoin, 22 Pick. 401; Kabley v. Gas Light Co., 102 Mass. 392; Shaw v. Farnsworth, 108 Mass. 357; Jenkins v. Eldredge, 3 Story (U. S.) 325; Thornton v. Payne, 5 Johns (N. Y.) 74; Weed v. Crocker, 13 Gray (Mass.) 219; Becar v. Flues, 64 N. Y. 518. (2) So also the fact that the property demised is to be subsequently constructed will not prevent a contract containing present words of demise from operating as an actual demise, to take effect as soon as the construction is complete. People v. Kelsey, 14 Abb. Pr. (N. Y.) 372; Bacon v. Bowdoin, supra; Western Boot & Shoe Co. v. Gannon, 50 Mo. 647; Doe v. Benjamin, 9 Am. and Eng. 644; Chapman v. Black, 4 Bing (N. C.) 187. (3) There is not a particle of evidence, or any pretense, that defendant agreed to execute any lease containing any such provisions as the petition avers, and therefore plaintiff can not maintain an action for the refusal of the defendant to accept a lease containing such conditions. For this reason this suit must fail. Hayden v. Lucas, 18 Mo. App. 325.

ELLISON, J.—This action is for damages and is based on an agreement to lease certain described premises in the city of St. Joseph, defendant having refused to sign a lease therefor or to take them. At the close of the case, the court sustained a demurrer to the evidence, and judgment was entered for defendant.

1.    It is first contended by plaintiff that an agreement for a lease need not be in writing under our statute of frauds. This is not, in general, a proper construction of that statute. If the agreement is for a lease of more than one year it must be in writing under the statute aforesaid.    1 Wood's Landlord and Ten., sec. 184; 1 Taylor's Landlord and Ten., sec. 30; Bacon v. Parker, 137 Mass. 309.    If the agreement for a lease is itself to be performed within a year, and such agreement contemplates a lease for a year or less, it need not be in writing.    For, if the agreement for the lease is to be performed within a year, it is valid under one branch of the statute; and if the lease contemplated by such agreement is for no more than a year it is valid under another branch of the same statute.

2.    So, therefore, if the agreement in this case was for a lease of more than one year it can not be the foundation of an action unless it was in writing.    The agreement declared on is for a lease for one year with the privilege of renewal for one, two, three, or four more years, the lessee to give sixty days notice before the expiration of the year of his intention to exercise his option of renewal.    An option in the lessee of a lease for one year to extend the term to a greater length than one year, transforms the contract into a lease for more than a year.    Therefore, if the agreement for a lease in this case is not in writing, it is non-enforcible.    2 Reed on Stat. of Frauds, sec. 800*; Hand v. Hall, 2 Ex. Div. 318.    Again referring to the two branches of the statute: The lease contemplated by this agreement, as has been just stated, was to give defendant an option to keep the property more than a year.    If defendant failed to exercise the option, the contract would be performed within a year and, therefore, under one branch of the statute might be thought to be valid, since the law is that a contract which may be performed in a year is not obnoxious to that branch of the statute.    But the view we have announced is placed on another branch of the

statute to which it is obnoxious, viz., that branch which re-
quire leases of land for more than one year to be in writing.

3.   Plaintiff contends that the agreement declared on
was in writing.   This claim is founded on letters written by
defendant's agent in which the terms of the agreement were
embodied in a written lease and accepted by plaintiff.   That
is to say, plaintiff prepared a lease, signed it and sent it to
defendant to sign.   Defendant returned it by letter saying it
did not contain the agreement and stating what the agree-
ment was, as understood by defendant, and that if a lease was
prepared and sent to it embodying its version of the agree-
ment it would sign.   This was accepted by plaintiff by tele-
gram.   The terms of the agreement were thus expressed in a
letter signed by defendant and an acceptance thereof by
plaintiff by telegram.   It is true that these writings were after
the verbal agreement, but the statute of frauds does not re-
quire that the agreement shall be evidenced by writing as soon
as made.   It is sufficient if it afterwards be put in writing.

4.   But where the written contract for a lease for more
than one year is made with an agent, and he was not author-
ized in writing, that renders the contract non-enforcible.
For, construing sections 3414 and 3418, Revised Statutes
1899, of the statute of frauds together, the law is, that while
an agent can make a contract leasing lands and tenements for
less than one year without authority in writing, he can not
do so for more than one year.   Hoover v. Pacific Oil Co.,
41 Mo. App. 317.   The contract in this case was made with
defendant's agent Dienger.   But from the very necessity of
the thing that law may not have room for application where
the agent is the agent of a corporation, and the act of con-
tracting for a lease, or of leasing, is such an act as is within
the scope of his authority.   For a corporation can only act
through agents, and when the act of the agent is within the
limit of the authority which his agency covers, *it is the act
of the corporation itself*, and the agent may act as though

he was the principal. Smith v. Railroad, 74 Mo. App. 48, 55. In this case it appears from defendant's letter introduced in evidence that Dienger was its "general agent for the West" and that he had authority to sign a lease referred to in the letter, but not the one in question. The evidence in the case, including the letter, shows that Dienger's agency was to look after the sale of defendant's beer which involved the renting of places where it might be sold. We, therefore, hold that in order to make a valid agreement for a lease, or the lease itself, Dienger did not need authority in writing.

5. Defendant's contention is that the contract in question was a lease itself *in praesenti,* and was not an agreement for a lease as sued upon and that therefore the action must fail. An examination of the authorities shows that it has been often found difficult to distinguish between an agreement for a lease and the contract of lease itself. It is important to distinguish between them since the consequences of a breach are essentially different. 1 Taylor's Landlord and Ten., sec. 37.

In this case we have no doubt that the agreement was for a lease and was not a lease itself *in praesenti.* Whether one or the other, depends upon the intention of the parties as disclosed by the contract; and, evident intention will overcome the mere words of the contract which, standing alone, would have an opposite meaning. 1 Taylor's Landlord and Ten., secs. 38, 39; Jackson v. Delacroix, 2 Wend. 433; Jackson v. Monarief, 5 Wend. 26. And such intention may be gathered from the several portions of the contract together, though each separately would not evidence the intention which all of them make out. In this case the building was not finished when this contract was made and the agreement to lease it was based on its being finished and certain things done and changes made so that it would suit the defendant. In our view, the upshot of the whole affair was that if the building was finished according to the understanding at which

the parties arrived, then the defendant would lease it for the period of one year for $1,200, with privilege of one, two, three or four more years at $1,500 per year, provided sixty days notice of election to take renewal was given; but if no renewal was taken, then the first year was to be $1,500. The finishing of the building and the dependence the leasing had to it, can very well be seen by the following extract from the architect's testimony:

"Mr. Dienger came up to my office with Mr. Donovan, and Mr. Donovan said that Mr. Dienger was going to rent his house, but that he wanted to have some improvements made in it, and they talked things over and it was mentioned that Mr. Max Mannheim was going to rent it from Mr. Dienger or going to take charge of it, and it would be better for us to be with him to go down and see what he wanted done, and so we made an arrangement to go down. I don't know, it was in the afternoon or it was the next morning, I forget. Anyhow, we went down. We came down there together and we went all over the premises, and I put down what they wanted done, what Mr. Mannheim suggested ought to be done —all the improvements. And then it was as far as I recollect, it was all agreed except they wanted first the cellar to be all paved with concrete. Then they wanted to have a cellar stairway in the rear to get in the rear part so as to get in potatoes and things easy, and then they wanted to have on the first floor, they wanted to have the dumb waiters fixed up to the second floor; they wanted a sink put in the kitchen, and also wanted closets put in the toilet room on the first floor and the second story, and then connections made with the sewer pipes for the bar connections for the supply pipe for water supply and waste, and there was a partition there on the second floor that they wanted to be torn down, but after awhile Mr. Mannheim said it was not necessary, and it was talked about having the house heated, too, but

some way or another they withdrew that demand, but the other parts were agreed upon."

We agree, as contended, that a present demise of a building to be finished, may be made to commence *in futuro*. Bacon v. Bowdoin, 22 Pick. 401; but the evidence in this case is widely different from that case and others cited by defendant, including that of The Western Boot Co. v. Gaunon, 50 Mo. App. 642.

6. Finally, the defendant claims that conceding the agreement was for a lease and not a lease itself, yet that there was a failure of proof of the agreement declared on in the plaintiff's petition. Much of the foundation for this assertion comes from the fact that plaintiff assumes that the lease demanded to be prepared by defendant's letter hereinbefore referred to and which was accepted by plaintiff, was no evidence of the original agreement between the parties. That assumption is not well founded. Defendant returned the first lease prepared, for the reason that it was not that agreed upon and stated what it considered and understood the agreement to be, and that it would sign a lease containing such agreement; that is, the agreement originally ma⸱ ⸱. This, the plaintiff agreed to. We, therefore, consider th  to be the assent of both parties as to what the original agreement was. The record shows that the lease signed by plaintiff and refused by defendant was considered to be the agreement between the parties except as stated in the letter. The refused lease, the letter and the telegram make up the written evidence of the contract. An unsigned writing may be referred to by a signed writing acknowledging that it contains the agreement and it satisfies the statute of frauds. 1 Taylor's Landlord and Tenant, sec. 35; Christensen v. Wooley, 41 Mo. App. 53. And an unsigned writing and one signed, each expressing a part, may together make up the whole agreement, if the latter acknowledges the former. The petition is based largely on this agreement thus embodied in the lease, thus prepared and

sent to defendant. It is true that there are some matters of difference between the petition and the evidence, but these do not constitute a failure of proof in its entire scope and meaning as contemplated by the statute (sec. 798, R. S. 1899), but rather a mere variance, which, when not objected to, is not fatal. Secs. 655 and 656, R. S. 1899; Mellor v. Railroad, 105 Mo. 471; Chouquette v. Railroad, 152 Mo. 257, 264.

The result of the foregoing views is to reverse the judgment and remand the cause. The other judges concur.