RAMER v. STATE OF INDIANA ET AL.

[No. 23,568.    Filed October 15, 1920.    Rehearing denied January 25, 1921.]

1. INJUNCTION.—*Disobeying Order.*—*Contempt.*—*Jurisdiction.*— *Harmless Error.*—Jurisdiction to punish for indirect contempt for disobeying a restraining order was properly invoked by filing an affidavit of the plaintiff in the case in which the restraining order was issued, in view of §1047 Burns 1914, §1012 R. S. 1881; and the mere fact that the papers filed and the entry of judgment were certified as of that case, rather

than in a case of the state against the defendant, was not prejudicial error. p. 130.

2. FRAUDS, STATUTE OF.—*Verbal Lease.—Renewal Privilege.*— A verbal agreement for a lease, with privilege of renewal for fifteen years, was void. p. 131.

3. INJUNCTION.—*Restraining Storage of Explosives.—Lease as Justification for Disobedience of Order.*—Where the defendant had been restrained from storing explosives on his farm, a written lease of the farm executed thereafter by him to a company permitting the erection of a building to be used for storing explosives, though the lease was dated and acknowledged by the notary as of the date of a verbal agreement, for future execution of the lease, made by the parties before the restraining order was issued, was a violation of the restraining order and hence afforded the defendant no justification, though he did not assist in storing the explosives, but merely took charge of the key to the storage building and delivered it to the company's driver, who returned it after depositing the explosives. p. 131.

4. INJUNCTION.—*Evidence.—Acts After Filing of Affidavit Showing Violation of Order.*—Acts of the defendant in an injunction suit in antedating a lease and having it acknowledged so as to make it appear that he could not have prevented the commission of acts forbidden by a restraining order, were properly considered in fixing the penalty, though such acts occurred after the affidavit forming the basis of the proceeding was filed. p. 131.

5. INJUNCTION.—*Contempt.—Discretion of Court.—Sufficiency of Evidence.*—In a proceeding for contempt of court for the violation of an order restraining storage of explosives on the defendant's farm, held that, in view of the evidence and the inferences warranted, there was no abuse of discretion by the court in imposing a fine of $500 without imprisonment if paid immediately, or imprisonment until the fine and costs were paid, under §§1045, 2182, 2188 Burns 1914, §§1010, 1857, 1863 R. S. 1881. p. 132.

From Decatur Circuit Court; *John W. Donaker,* Judge.

Action by Frank H. Sefton against Robert F. Ramer, wherein a restraining order was issued. On affidavit filed in such proceeding, defendant was adjudged guilty of contempt in violating the restraining order, and he appeals. *Affirmed.*

*Hugh Wickens, John E. Osborn* and *Frank Hamilton,* for appellant.

*George L. Tremain* and *Rollin A. Turner,* for appellee.

EWBANK, J.—This is an appeal from a judgment imposing upon the appellant a fine for an alleged contempt of court in disobeying a restraining order against him, issued at the suit of the appellee Sefton. Said appellee, the plaintiff in a civil action seeking an injunction, filed with the court his affidavit, entitled with the names of the plaintiff and defendant in that action, as set out below, charging that the appellant had done certain acts in violation of the restraining order, and upon a hearing the court adjudged appellant guilty, and entered in its order book a finding and judgment under the title and number of the civil action, "Frank H. Sefton vs. Robert F. Ramer, No. 9506."

The judgment was that appellant be fined $500 and costs, and committed to prison until the fine and costs are paid. But he was released on bail pending the ruling on a motion for a new trial and this appeal.

The evidence tending to sustain the finding and judgment of the court that appellant was guilty of the offense charged was substantially as follows: On Monday, January 7, 1919, a complaint, duly verified, was filed in the Decatur Circuit Court, alleging that the appellant was the owner of a quarter section, containing 160 acres of land lying west of the Fort Wayne Pike, and separated by it from the farm owned by the plaintiff in that action (Frank H. Sefton) on which he lived; that on the day before the appellant had caused and permitted to be erected on appellant's said farm a small building within fifty rods from the residence of the plaintiff and the Fort Wayne Pike, and not far from certain tenant houses on plaintiff's farm, and was threatening to and would store and permit to be stored

in the building nitroglycerine, dynamite and other explosives in quantities of from 300 to 1,000 quarts at a time; that said building was also near other dwelling houses where other persons lived, and near the track of a railroad; that said explosive substances so stored were liable to explode at any time; that plaintiff, his family and tenants were kept in constant fear of such an explosion, and they and all persons living in the neighborhood, and travelers on the highway and railroad were kept in imminent and constant danger; that theretofore nitroglycerine, dynamite and other explosives in similar quantities were stored on another farm, about a mile from plaintiff's residence, and on a day in the next preceding month—December, 1918—they exploded, from causes unknown to plaintiff, and broke the windows in plaintiff's residence and tenant houses, and in other residences within a radius of five miles; and that the storage of such explosives there would constitute a nuisance, and imperil the lives and property of plaintiff and his tenants and neighbors, and of his and their families. A summons was issued and was served on appellant the same day. A small wooden building, "six by eight," had been hauled out from town by the American Glycerine Company and set up on appellant's farm the day before, the appellant cutting the wire fence to open a way to drive in. After dark on the evening of the day the complaint was filed and the summons was served, or the next evening— witnesses differ—a wagon load of explosives was hauled to and stored in said building by the American Glycerine Company. About nine o'clock the next morning— Wednesday, January 8, 1918—a restraining order issued by the court was served on the appellant, which recited the filing of a verified complaint and bond, and ordered that appellant be and was "restrained from storing and permitting to be stored nitroglycerine,

dynamite or other explosives upon" his farm. The agent of the American Glycerine Company, who controlled its business, was Ira Bird, a brother of appellant's wife. On Saturday, January 11, 1919, said agent left at appellant's home the key to the small building where the explosives were stored, and told appellant that if the dynamite man came along and asked for the key to tell him where it was. Later that day the man stopped and said he wanted to get the key, and appellant pointed it out to him where appellant's wife had hung it on the porch when her brother, the company's agent, left it. The man drove in and put some more explosives in the little house. Appellant went up to the crossroad north of his house to see the nitroglycerine man as he drove out about a key, and at the time admitted that he came up to get the key to this house, though he denied at the trial that he received the key back or ever afterward had it. Notice of an application for a temporary injunction on January 18, 1919, had been issued and served, but on that date the hearing was continued by agreement until January 25. On January 20, 1918, the plaintiff in the injunction suit filed an affidavit charging that on January 11, 1919, after being served with the restraining order, "the said defendant (appellant) had possession of a key to said storehouse, and did on said day unlock said building and permit a large quantity of nitroglycerine and explosives to be stored in said storehouse on said real estate in violation of the order," etc. A rule was entered against appellant returnable January 25, 1919. At the trial on that day upon the charge of contempt of court, in answer to questions by his own counsel, appellant testified that he had "leased the farm to the American Glycerine Company," and that he "rented it to them" on December 30, 1918; that they owned the storage house, and appellant had no control over it; and

under examination by opposing counsel he testified that he had signed a written lease "day before yesterday"— January 23, 1919—and dated it back to December 30, 1918, which recited that in consideration of $25 paid to him he leased to the American Glycerine Company, for "one year from date hereof, with the privilege to renew from year to year at the option of the (lessee) not to exceed in all a term of fifteen years, the exclusive right and privilege to erect and maintain a storage magazine for the storage of nitro-glycerine and other explosives, and to store such commodities therein, on" the appellant's said quarter section of land, and that the lessee should "have a right of way over and through said premises to go from the highway to and from said magazine with teams and vehicles * * *. If, at any time, the said (lessee) shall be prevented by lawful authority from using said premises for the purposes hereinbefore mentioned, or notified by lawful authority to remove the explosives from said magazine * * * the (lessee) shall then be released from any obligation to pay rent for the further use of said premises." Not only was this instrument dated back to December 30, 1918, a week before the injunction suit was begun, but it also contained a notary's certificate by a man who the appellant testified was one of his attorneys, that the lease was acknowledged before him on December 30, 1918. And appellant further testified that "when he rented the farm" he did his talking with Ira Bird, the agent of said company, who had blank contracts with him, which he showed to appellant, and they agreed to reduce the agreement to writing "when Mr. Lippert came," and that when he came they reduced it to writing. After the building was set in his field, being a morning or two after the explosives were put in it, appellant was seen working right by it, but

the witness did not know what he was doing. Appellant continued to live upon and occupy his farm as before. He was advised by counsel that he had no right to interfere with the lessee going to the dynamite house after making such verbal lease, and before reducing it to writing.

At the conclusion of the hearing appellant answered questions as follows: "Q. Now is it your intention to permit those people or anybody else to go in from the road there? A. Certainly. Q. You don't intend to try to keep them out? A. No. Q. And you propose to let Ira Bird take nitroglycerine there? And you are not going to object? A. Well, they rented the farm. Q. And if they would drive in there today with a load of nitroglycerine you would make no objection? A. I would make no objection."

Appellant added that he was advised that, having rented the place, he would have no right to make any objections, or to interfere with the company and its agents going in there.

We think that the jurisdiction of the court to punish for an indirect contempt of its authority in disobeying the restraining order was properly invoked by

1. filing the affidavit of the plaintiff in the case in which the restraining order was entered. §1047 Burns 1914, §1012 R. S. 1881. And the mere fact that the papers filed and the entry of judgment were certified as of that case, and not as of a case of the State of Indiana against appellant, was not an irregularity by which the appellant was in any way prejudiced.

The principal contention of the appellant is that, since he had given the American Glycerine Company a verbal promise, on December 30, 1918, to execute a lease such as was thereafter executed, as soon as Mr. Lippert came, and it had put its storage house on the farm pursuant to that agreement, it had the right to

cccupy the farm for the storage of explosives from and after that date, regardless of what the appellant might say and do, and that the court cannot punish him for "permitting" what he had no power to prevent.

Whether or not the court might have been justified in concluding from the evidence that the American Glycerine Company acquired some rights of possession as against the appellant by taking possession to the extent that it did, and locating a storage house on the farm, under the verbal agreement with appellant, we do not find it necessary to decide. The company is not a party to this appeal.

It is obvious that the verbal agreement for a lease, with the privilage of renewal for fifteen years, was void. 1 R. S. 1852 p. 291, §1, last clause; §4904 R. S. 1881, §7462 Burns 1914; *Hand* v. *Hall* (Eng. 1877), L. R. 2 Ex. Div. 318; *Hand* v. *Osgood* (1895), 107 Mich. 55, 65 N. W. 867, 61 Am. St. 312, 30 L. R. A. 379; *Rosen* v. *Rose* (1895), 13 Misc. Rep. 565, 34 N. Y. Supp. 467; *Donovan* v. *Brewing Co.* (1902), 92 Mo. App. 341, 344; 2 Reed, Statute of Frauds §800; 20 Cyc 214.

But whatever right to the use and occupation of the storage house the company may or may not have acquired for a limited time, as against the appellant, the evidence and the inferences which might legitimately be drawn therefrom fully justified the trial court in deciding, as it did, that appellant had violated both the spirit and letter of the restraining order. As against appellant, the court had adjudged that the storage of explosives there constituted a nuisance. If it did, the American Glycerine Company could have no lawful right to store them there, even under a valid lease. And the agreement to lease the land could not have afforded any justification for the appellant if he had gone to the stor-

age house with the lessee's driver and had helped him to unload the dynamite there. And it affords no greater justification for him in taking charge of the key to the storehouse for the American Glycerine Company's agent, delivering it to the driver of the dynamite wagon when he came along, and meeting the man at the crossroads as he drove away to get the key back. The execution of the written lease for fifteen years, after the restraining order was served, dating it back before the beginning of the injunction suit, and procuring his own attorney, as a notary public, to certify that it was acknowledged twenty-three days earlier than the actual date of its execution and acknowledgment, thus giving to the American Glycerine Company an apparent legal right of occupation for fifteen years, instead of whatever right for a much shorter time it might have acquired, enforceable in equity, by reason of having taken actual possession under the verbal agreement for the future execution of a fifteen-year lease, was an act clearly forbidden by the restraining order, and directly tending to make the order ineffectual. And it was an act wholly outside of any legal duty imposed on appellant by his verbal agreement of December 30, 1918, that agreement being void, and he being restrained by the court. And while it occurred after the affidavit was filed, it was proper to be considered in fixing the penalty.

Taking into consideration the relationship between the appellant and the agent of the American Glycerine Company, and the activity of appellant in behalf 5. of that company, and the inferences which might reasonably be drawn from the facts proved, there is sufficient evidence to sustain the finding of the court that appellant was guilty as charged. The maximum penalty which the court might have imposed, pursuant to such finding, would have been a fine of $500,

and also imprisonment for not more than three months. The sentence imposed was only a fine of $500, without imprisonment, if such fine and the costs were paid immediately, or imprisonment until the fine and costs should be paid. §§1045, 2182, 2188 Burns 1914, §§1010, 1857, 1863 R. S. 1881; *Perry* v. *Pernet* (1905), 165 Ind. 67, 71, 74 N. E. 609, 6 Ann. Cas. 533.

In view of all the evidence, we do not think the trial court abused its judicial discretion in fixing the amount of the punishment.

The judgment is affirmed.

Myers, C. J., not participating.