LINTNER, Appellant, vs. OFFICE SUPPLY COMPANY, INC., and others, Respondents.

*April 5—May 8, 1928.*

38

40

For the appellant there was a brief by *Foley, Brach & Colbert* of Racine, and oral argument by *Cornelius M. Colbert* and *J. J. Foley*.

For the respondents there was a brief by *Simmons, Walker & Wratten* of Racine, and oral argument by *John B. Simmons* and *Charles M. Wratten.*

DOERFLER, J. What was the effect of the instrument of conveyance from Bolton and Jones to Williams? Did it convey a fee in the alley to the grantee, with a reservation of use in the grantors, or did it merely convey a right of way? A correct solution of this question, in our view, is determinative of the issues in the case. Such was also the view of the lower court, expressed in its opinion.

The instrument of conveyance is clearly in the form of a warranty deed. The clause above quoted, known as the granting clause in a deed, is one in common use in warranty deeds in Wisconsin. Plaintiff's counsel contend that the words immediately following the description in the granting clause, to wit, "to be used as a private road or way in common with the parties of the first part, their heirs and assigns, forever," indicate that it was the intention of the grantors to merely convey an easement and not the title; furthermore, plaintiff's counsel place considerable significance in the words in the instrument through which the scrivener has seen fit to draw a line. In any event, counsel for the plaintiff assert that the language employed in the instrument is such as to raise a doubt as to the intention of the grantors, whether they intended to convey the title or merely an easement.

The rule is well intrenched in our jurisprudence that doubtful language contained in an instrument of conveyance will be most strictly construed against the grantor who has employed such language; and this view is forcibly expressed in 8 Ruling Case Law, p. 1051, as follows:

"A deed is construed most strongly against the grantor and in favor of the grantee. This rule has been called one of the most just and sound principles of the law, because of the fact that the grantor selects his own language. . . . If, therefore, the deed can inure in different ways, the grantee,

it is said, may take it in such way as will be most to his advantage."

If the grantors had in mind the conveyance of a mere easement, they would have employed language ordinarily used to effect that purpose. The form of the instrument and the language used, and the words eliminated from the form by the line drawn through them, are persuasive that the scrivener was not a mere ordinary conveyancer, but that he comprehended the legal meaning of the words eliminated, and realized that their retention would have been inconsistent with the intentions of the parties with respect to the object and purpose had in mind by the grantors in regard to what they intended to convey. In other words, in order to be as plain as possible, if the language eliminated had been permitted to remain in the instrument it would have signified an absolute conveyance of the alley in fee simple, without any reservations whatsoever. The language employed, viz. "together with all and singular the *hereditaments and appurtenances* thereto in any wise appertaining," signifies a conveyance of the title. "Hereditaments and appurtenances" apply to land and are uniformly and universally used in conveyances of land, and not of easements.

This instrument also further contains the usual habendum and warranty clauses incorporated in warranty deeds. The habendum clause states the character of the grantee's estate and cannot serve to pass any other real estate than that which is described in the premises of the deed. This clause usually follows the common language used in deeds, "To have and to hold." So that, connecting up the habendum clause with the premises, we have a clear expression in the deed which is persuasive, though not conclusive, that the grantors intended to convey the fee, and not a mere easement.

"Nothing can be limited in the habendum of the deed which is not given in the premises, . . . for then the grantee

would in fact take a thing which was never given to him. The same observation may be made of the covenant of warranty. Its effect is limited expressly to assure the title of the grantee to the lands granted in the *premises* of the deed; for it would be absurd to make such a covenant in respect to lands the title to which still remains in the grantor." *Long Island R. Co. v. Conklin,* 32 Barb. 381; *Kilmer v. Wilson,* 49 Barb. 86.

In the *Kilmer Case, supra,* the grantor granted to the grantee, his heirs and assigns, "all that certain strip of land hereinafter described of the width of twenty-four feet, for a private road." The deed was a warranty deed, and contained full covenants of warranty. In the opinion the court said:

"The words 'for a private road' which precede the description of the premises, taken in connection with the covenant on the part of the grantee that the grantor, his heirs and assigns, should have free and full permit to travel the aforesaid road, have the effect to limit the general use of the strip of land by the grantee so as not to deprive the grantor of the right reserved to travel upon the same. . . . It is quite clear that M. intended to convey this strip of land to W., retaining the right to pass over it, and that was accomplished by the construction which has been given to the deed in question."

In the opinion also the court laid stress upon the doctrine, well established, that in construing a deed the main object and purpose is to ascertain the intention of the parties, and when such intention is ascertained to give effect to the same.

In the case of *Coburn v. Coxeter,* 51 N. H. 158, where a strip of land was conveyed and where the deed also provided that such land "is to be used for a road and for no other purpose whatever," the court held:

"Here the land itself, in the broadest terms, is granted and the restriction upon the use is entirely consistent with the passing of the fee. It is true that the land was to be used for a road and for no other purpose whatever; but at the same time it is inconceivable that the land should have been

granted in explicit terms when only an easement was intended."

See, also, the following cases, cited in respondents' brief: *Soukup v. Topka,* 54 Minn. 66, 55 N. W. 824; *Weihe v. Lorenz,* 254 Ill. 195, 98 N. E. 268; *Low v. Streeter,* 66 N. H. 36, 20 Atl. 247, 9 L. R. A. 271.

In the case of *Polebitzke v. John Week L. Co.* 157 Wis. 377, 147 N. W. 703, the fifth paragraph of the syllabus reads as follows:

"A deed conveying a strip of land one rod wide bordering on a river, 'for the purpose of rafting and boomage,' and containing the usual granting clause appropriate to convey a fee, together with the ordinary habendum clause and covenants of warranty, is held to convey at least a limited fee in the strip of land described, for the use specified, and to entitle the grantee and its assigns to permit logs drifted thereon in the course of being driven down the river to a boom below, to remain there as long as desired without liability for trespass."

The sixth paragraph of the syllabus reads as follows: "The words 'for the purpose of rafting and boomage' in such deed are entirely inadequate to create a condition subsequent."

In the case of *Towne v. Salentine,* 92 Wis. 404, 66 N. W. 395, it is held, as appears from paragraph 1 of the syllabus:

"A deed 'reserving' from the premises described (being a part of a tract owned by the grantor) a strip to be used and kept open as an alley for all the owners of said tract, conveys the title to such strip, subject only to the easement."

Numerous other citations could be referred to, but we have been unable to find a single case where the language used in the deed upon the material question herein involved is in all respects identical with that used in the deed involved in the instant case. The cases above referred to and from which quotations have been incorporated herein are valuable largely for the analogous logic which may be deduced there-

from; but independent of any authority upon the subject, we will say that in our view of the case the language used in the Williams deed is entirely clear and unambiguous, and we conclude therefrom that it was the intention of the grantors to convey the title to the grantee, reserving only to the grantors, their heirs and assigns, the right to use the premises conveyed as a right of way for the purposes of travel, in common with the grantee, his heirs and assigns.

In connection with the claim made by plaintiff's counsel that the language contained in the deed creates a doubt as to the intentions of the parties, it is asserted that the subsequent acts of the parties claiming an interest in this alley constitute a construction of the deed and are persuasive that the grantors intended to convey merely an easement and not the fee. In this connection the record discloses that Williams died testate in 1870, four years after the deed from Bolton and Jones was executed. Under the provisions of the will the widow was given a life estate, with remainder over to the four children. After the will was admitted to probate an inventory was filed, in which the alley was denominated as a right of way, in common with Bolton and Jones, for a private road. Below the description of the right of way the inventory states that the value of the right of way is included in the above property, evidently referring to the property of Williams described in the inventory.

Subsequent to this there were a number of conveyances of the alley from Bolton and Jones and subsequent grantees, in which the alley was conveyed subject to the right of way of the heirs and assigns of Hugh G. Williams, deceased. On the other hand, without specifically referring to the conveyances, the record discloses that the Williams heirs and their successors in title conveyed this strip by deeds which substantially used the identical language in the granting clause that was used by Bolton and Jones to Williams in the deed executed in 1866.

It is readily conceivable that, lingering under a false im-

pression as to the legal effect of the deed executed in the year 1866, the respective owners or persons having an interest therein thereafter, might assume a position inconsistent with a proper legal construction of this deed. But, regardless of the position they might have assumed, they cannot effectually by their acts change that which had theretofore been definitely fixed and determined by a written instrument, without the consent or co-operation of all parties interested in the property. While, as we have heretofore determined, the language of this Bolton and Jones deed, executed in 1866, is unambiguous, nevertheless we will refer to one specific instance where the plaintiff has recognized clearly the title of the alley in the successors in title of Hugh G. Williams. On October 1, 1901, the plaintiff became the owner by purchase of the balance of lot 7. The widow of Hugh G. Williams was then dead, and the children, as remaindermen, succeeded under the will to the rights of Hugh G. Williams in the title to the alley. The plaintiff at that time concluded to erect a building upon the balance of lot 7 exclusive of the alley, and he conceived the idea of extending the same over this ten-foot strip. In the negotiations which led up to a written agreement between the children of Hugh G. Williams, deceased, and the plaintiff, the respective parties were represented by counsel. The agreement was executed on November 9, 1901, and the children of Hugh G. Williams were denominated as parties of the first part, and the plaintiff as party of the second part. The granting clause of this agreement is as follows:

"The right to erect and forever maintain on the property hereinafter described the second and upper stories of a building to be erected to the south of said property and to extend or bridge over said real estate, the same to be supported on the north line by six (6) inches iron posts to be set along the north line of said real estate, or by a brick wall one (1) foot in thickness, while the wall on the south of said real estate shall be not less than ten feet and six inches from the north line of said real estate, leaving a strip of land clear

from all obstructions of not less than ten (10) feet in width. That said building or bridge shall be so constructed as to leave an unobstructed driveway over said real estate of not less than ten (10) feet in width and thirteen (13) feet in height in the clear; . . .

"And said party of the second part, for and in consideration of the conveyance to him by the parties of the first part of the right and privilege of so erecting and maintaining said building as aforesaid, does covenant and agree to and with the parties of the first part to pay for said privilege and does hereby pay the said parties of the first part in consideration of said conveyance the sum of twenty dollars, the receipt whereof is hereby acknowledged, and does further agree to pay all taxes and special assessments for general and special purposes levied against said premises and also all those levied against the real estate described in a deed given by James Bolton and wife and Evan O. Jones and wife to Hugh G. Williams on the 28th day of December, A. D. 1866, and recorded in the office of the register of deeds of Racine county, Wisconsin, in volume 48 of Deeds on page 704, and now owned by the heirs of Hugh G. Williams, deceased, and that he will maintain the sidewalk in front of said premises, and will keep all of the property herein described in good condition to be used as a private driveway, remove the snow therefrom or other obstructions, and keep the same in such condition that it will comply with the sanitary requirements of the city of Racine."

Here we have a clear and express recognition on the part of the plaintiff of the ownership of this land, at the time the agreement was entered into, in the children of Hugh G. Williams, deceased. Pursuant to this agreement the owners, viz. the Williams children, parted with and granted valuable rights, which act is consistent solely with the idea of ownership. None of the acts heretofore referred to by plaintiff's counsel as manifesting a construction of the deed of 1866 compare in their power of persuasiveness with the indisputable recognition of title manifested by the two parties primarily interested in the strip in question.

It follows, therefore, that the learned municipal judge arrived at the correct conclusion in his findings, pursuant to

which the deed of 1866 was construed as vesting the title to the land in Hugh G. Williams, his heirs and assigns, reserving to the grantors, their heirs and assigns, an easement.

Plaintiff's counsel, however, further contend that in any event the deed of Bolton and Jones to Williams, executed and delivered in 1866, constitutes the grantors, their heirs and assigns, and the grantee, his heirs and assigns, as tenants in common; that the plaintiff and Lawrence and Clark are now such tenants in common; and that one cotenant cannot grant a right or an easement of common property without the consent of the other cotenants; and that therefore the grant in 1925 by Lawrence and Clark to the testamentary trustees of the Shoop estate, without the consent of the plaintiff, is ineffectual. The ingenious doctrine thus invoked by the learned counsel for the plaintiff would be worthy of the most serious consideration if the premises were supported by the actual facts. The easement existing upon the property involved is not an exclusive one; it is one reserved for the benefit of Bolton and Jones, their heirs and assigns. By the deed of 1866, with the exception of the reservation of an easement, Bolton and Jones parted with every other interest they had in the property. The easement reserved for the benefit of Bolton and Jones, their heirs and assigns, not being an exclusive one, left the plaintiff with the right to use this strip for purposes of travel, and the right to dispose of other similar easements in such alley, on condition, however, that the use of such other easements shall not unreasonably interfere with the rights reserved under the Bolton and Jones deed. So that the right of Lawrence and Clark to use the alley is referable to their ownership of the fee, while the rights of the plaintiff are referable to the easement granted under the deed of Bolton and Jones, which easement is appurtenant to his adjoining land, being the balance of lot 7. The plaintiff, therefore, by virtue of his ownership of lot 7 excepting the north ten feet thereof, is the owner of the dominant estate, while the alley over which the

easement has been reserved constitutes the servient estate. It being necessary, where an easement is granted, that there exist a dominant estate, the use of this easement is confined and referable to lot 7, located south of the alley, and no other easements appurtenant to other property can legally or effectually be conveyed by the plaintiff, his heirs or assigns, in this alley. As is properly said in respondents' brief: The owner of a right of way, unless expressly made exclusive, does not acquire dominion over the property affected, but is entitled "only to a reasonable and usual enjoyment thereof, . . . and the owner of the soil is entitled to all the rights and benefits of ownership consistent with the easement." *Dyer v. Walker,* 99 Wis. 404, 75 N. W. 79.

From the foregoing it follows that the judgment of the lower court must be affirmed.

*By the Court.*—It is so ordered.