Karen GARRETT, as successor Trustee to
David T. Murphy on behalf of the
David T. Murphy Revocable Trust 02/19/04,
Plaintiff-Respondent,

v.

Hugh O'DOWD and
Kathleen O'Dowd,
Defendants-Appellants.

Court of Appeals

*No. 2008AP1756. Submitted on briefs March 24, 2009.
—Decided September 9, 2009.*

2009 WI App 146

(Also reported in 775 N.W.2d 549.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Andrew P. Smith* of *O'Melia, Schiek & McEldowney, S.C.* of Rhinelander.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Scott A. Cirilli* of *Cirilli Law Offices, S.C.* of Rhinelander.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. Hugh and Kathleen O'Dowd appeal a judgment granting trustee Karen Garrett and the David T. Murphy Revocable Trust dated February 19, 2004 (collectively, "Murphy"), exclusive use of an express easement along the shoreline of the O'Dowd property.[1] Because we conclude that the trial court erred when it found ambiguity in the document creating the easement, we reverse.

## BACKGROUND[2]

¶ 2. In 1977, Cletus and Rose Schey divided their parcel into what are now the O'Dowd and Murphy properties. The O'Dowd and Murphy properties are adjacent to one another, but only the O'Dowd property includes frontage along Big Lake in Vilas County, Wisconsin. The trial court found that "[w]hen subdividing the property, the Scheys would have provided the Murphy parcel with its own lake frontage, but were precluded from doing so by a [town] zoning ordinance which contained a minimum lakefront requirement [that] could not be met by both parcels if the lake frontage was divided." Instead, the Scheys executed a

---

[1] David T. Murphy died on March 5, 2007. His daughter, Karen Garrett, is the successor trustee of the David T. Murphy Revocable Trust dated February 19, 2004.

[2] The facts in this section are drawn from the circuit court's findings of fact, which we accept unless the circuit court's finding is clearly erroneous. *See Richards v. Land Star Group, Inc.*, 224 Wis. 2d 829, 846, 593 N.W.2d 103 (Ct. App. 1999).

538

written and recorded Easement Agreement that gave the Murphy parcel access to Big Lake.

¶ 3. Because this appeal concerns only the trial court's interpretation of the express easement, it is not necessary to restate all of the unfortunate events that culminated in this lawsuit between neighbors. The Easement Agreement provides, in relevant part, that "in the event the grantees make all of the payments as required by [the land contract agreement dividing the parcels], the grantors hereby convey to the grantees a permanent easement across the following described property." The Agreement then describes by metes and bounds that portion of the O'Dowd parcel subject to the easement.[3] The Agreement concludes by conditioning the continued existence of the easement upon the grantees' maintenance of the easement property and payment of an "appropriate share of the real estate taxes based upon the front footage assessment levied by the township."

¶ 4. Murphy filed suit, claiming that the O'Dowds had intentionally interfered with its use of the lake-front easement. After a bench trial, the circuit court concluded that the lake easement was "ambiguous because the Easement Agreement does not expressly state its scope or whether the easement is exclusive or nonexclusive." The court consulted extrinsic evidence to clarify the ambiguity:

> Based on the fact that [the] Scheys were prevented from conveying the Murphy parcel as a lakefront par-

---

[3] The residences on both the O'Dowd and Murphy parcels sit considerably higher than the shoreline. The easement is partially forested and contains a staircase that the trial court concluded was "required in order to make any reasonable use of access from the upper portion of the [Murphy parcel] to the lake."

cel, based on the requirements of the Easement Agreement for the grantees to maintain the easement strip and to pay annual taxes on the land, and the history of such payments, and based on the history of use of the easement by the owners of the respective parcels, the lake easement was intended to be, and is, an exclusive riparian easement in favor of the Murphy parcel.

The court further concluded that "the lake easement entitle[d] the plaintiff and its heirs and assigns to the exclusive use of the entire easement parcel .... The O'Dowds shall have no use of the parcel or the stairs."

## DISCUSSION

¶ 5. The trial court's decision was based upon its interpretation of the written Easement Agreement, and we look to that instrument in construing the rights of the landowners. *See Hunter v. Keys*, 229 Wis. 2d 710, 714, 600 N.W.2d 269 (Ct. App. 1999). "The meaning of an easement created by deed involves construction of the deed's language." *Id.* Absent ambiguity in the deed, it is inappropriate for a court to look outside the deed, including at how easements are currently being used. *WPS Comm'n v. Andrews*, 2009 WI App 30, ¶ 13, 316 Wis. 2d 734, 766 N.W.2d 232. "If the language within the four corners of the deed is unambiguous, the court need not look further for the parties' intent." *Eckendorf v. Austin*, 2000 WI App 219, ¶ 7, 239 Wis. 2d 69, 619 N.W.2d 129. Both the existence of ambiguity and the meaning of an unambiguous deed are questions of law that we review de novo. *Andrews*, 316 Wis. 2d 734, ¶ 10.

¶ 6. The trial court erred when it concluded that the deed was ambiguous. The deed satisfies all of the

statutory requirements for the conveyance of an easement,[4] but is silent as to whether the rights granted to the easement holder are exclusive. In some contexts silence can create ambiguity. *See, e.g., Preston v. Meriter Hosp., Inc.*, 2008 WI App 25, ¶ 20, 307 Wis. 2d 704, 747 N.W.2d 173 (statutory silence can create ambiguity). However, in light of long-settled property principles and the widespread reluctance of courts to find an exclusive easement in the absence of unambiguous language, we conclude that an express easement must contain an affirmative statement of exclusivity in order to convey the right to exclude the fee owner.

██ ██

¶ 7. An easement is, by definition, "an interest in land which is in the possession of another." *Eckendorf*, 239 Wis. 2d 69, ¶ 7. It is "a liberty, privilege or advantage in land *existing distinct from the ownership* of the soil." *Town of E. Troy v. Flynn*, 169 Wis. 2d 330, 338, 485 N.W.2d 415 (Ct. App. 1992). "[T]he dominant owner does not obtain an estate in the servient property, but only a right to use the land consistent with the general property rights of the servient owner." *Gojmerac v. Mahn*, 2002 WI App 22, ¶ 19, 250 Wis. 2d 1, 640 N.W.2d 178. Thus, the owner of the servient estate may make "all proper use of his land including the right to make changes in or upon it," as long as he or she does not unreasonably interfere with the easement holder's use of the land. *Wisconsin Tel. Co. v. Reynolds*, 2 Wis. 2d 649, 652, 87 N.W.2d 285 (1958).

██

¶ 8. The trial court in this case concluded that the Easement Agreement conveyed an exclusive easement.

---

[4] *See* WIS. STAT. § 706.02. All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

An exclusive easement modifies the ordinary relationship between the dominant estate and the servient estate in a significant way:

> An exclusive easement grants unfettered rights to the owner of the easement to use the easement for purposes specified in the grant "to the exclusion of all others"; because the exclusive easement, in effect, strips the servient owner of the right to use the land for certain purposes, thus limiting the fee, and itself has been called almost a conveyance of the fee, this type of easement is generally not favored by the courts.

7 JOHN H. PEARSON, THOMPSON ON REAL PROPERTY § 60.04(b)(2) (David A. Thomas ed., 2004). Of course, where an express easement is involved, the property rights of the parties are defined by the written instrument and the parties are free to negotiate the extent of the easement holder's rights.

■

¶ 9. The only Wisconsin authority on the subject of exclusive easements is contrary to the trial court's conclusion. Generally, ambiguity in an "exclusive" easement stems from a lack of clarity regarding the definition of that term.[5] The parties have not cited, nor have we found, any Wisconsin case in which ambiguity

---

[5] An "exclusive easement" can have several meanings. In *Latham v. Garner*, 673 P.2d 1048 (Idaho 1983), the court found ambiguity in the phrase "exclusively for their use" because the phrase "lends itself . . . to a number of interpretations." *Id.* at 1052. The court found that three different meanings were possible:

The instrument could be interpreted as (1) the grant of an easement right of way to the grantee . . . to the exclusion of all others, *except* the grantor; or (2) the grant of an easement right of way excluding all others, *including* the grantor; or, (3) as the grant of a fee simple estate to the grantee.

flowed from the mere silence of the written instrument as to exclusivity.[6] But in *Lintner v. Office Supply Co.*, 196 Wis. 36, 48–49, 219 N.W. 420 (1928), our supreme court suggested that the intent to convey an exclusive easement must be clear from the face of the written instrument.

¶ 10. In *Lintner*, the plaintiff brought suit to enjoin the defendants from using an alley over which the plaintiff maintained an easement. *Id.* at 39–40. The defendants, as fee owners of the property, had also granted an additional easement to a third party over the same alley. *Id.* at 40. In concluding that the plaintiff had no right to exclude the fee owners or others to whom the owners had granted easements, the supreme court stated that "[t]he owner of a right of way, unless *expressly* made exclusive, does not acquire dominion over the property affected, but is entitled 'only to a reasonable and usual enjoyment thereof,' . . . and the 'owner of the soil' [h]as 'all the . . . benefits of ownership consistent with the easement.' " *Lintner*, 196 Wis. at 50 (quoting *Dyer v. Walker*, 99 Wis. 404, 408, 75 N.W. 79 (1898)) (emphasis added).

¶ 11. The Easement Agreement in this case does not even hint at exclusivity. It merely states that "the grantors hereby convey to the grantees a permanent easement across the property." No words in the grant suggest that the Scheys intended to impose such an

---

*Id.* (emphasis added). In Wisconsin, an exclusive easement may also be interpreted as preventing a fee owner from subjecting easement land to additional burdens. *See Lintner v. Office Supply Co.*, 196 Wis. 36, 49, 219 N.W. 420 (1928).

[6] Both parties have noted, and our independent research has confirmed, that there is a paucity of law in Wisconsin regarding exclusive easements.

extraordinary burden upon the O'Dowds' property. The Easement Agreement does obligate Murphy to maintain and pay taxes upon the easement, but it contains no language identifying Murphy as the beneficiary of an exclusive interest. Without a more definite statement as to exclusivity, indeed *any* statement as to exclusivity, it was error for the trial court to read ambiguity into the instrument.

¶ 12. Our conclusion is supported by a great deal of authority from other jurisdictions. In *Latham*, the Idaho Supreme Court conducted a thorough review of the law and observed that "[t]he reason most often cited for finding a particular easement non-exclusive is that the granting instrument does not clearly and specifically provide for exclusivity in the dominant estate." *Latham*, 673 P.2d at 1051. Many other courts also demand that grantors make their intent to convey an exclusive easement unambiguous. *See* 7 PEARSON, *supra,* §§ 60.04(b)(1),(2) ("[u]nless the grant establishing the easement specifically states that the easement is exclusive, the servient estate owner 'retains the right to use the property in common with the grantee' " (quotation omitted)); *see also City of Pasadena v. California-Michigan Land & Water Co.,* 110 P.2d 983, 985 (Cal. 1941); *Bergen Ditch & Reservoir Co. v. Barnes,* 683 P.2d 365, 367 (Colo. Ct. App. 1984); *Stephens v. Dobbins,* 511 So. 2d 652, 652–53 (Fla. Dist. Ct. App. 1987); *Yeomans v. Head,* 253 S.E.2d 746, 747 (Ga. 1979); *Jakobson v. Chestnut Hill Prop., Inc.,* 436 N.Y.S.2d 806, 811 (N.Y. Sup. Ct. 1981). This rule is well-reasoned and we therefore reverse the trial court's decision with respect to the lakefront easement.

*By the Court.*—Judgment reversed.