**2024 WI App 20**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case Nos.:    2022AP1196
2022AP1198

Complete Title of Case:

**NO. 2022AP1196**

**COUNTY OF DANE,**

    **PLAINTIFF-APPELLANT,**

    **V.**

**TCOB2 IRREVOCABLE TRUST,**

    **DEFENDANT-RESPONDENT.**

---

**NO. 2022AP1198**

**COUNTY OF DANE,**

    **PLAINTIFF-APPELLANT,**

    **V.**

**MARY JO JOHNSON,**

    **DEFENDANT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | March 14, 2024 |
| Oral Argument: | February 1, 2023 |

| | |
|---|---|
| JUDGES: | Kloppenburg, P.J., Blanchard, and Nashold, JJ. |
|     Concurred: | |
|     Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *David R. Gault*, assistant corporation counsel, Madison.  There was oral argument by *David R. Gault*. |
| Respondent<br>ATTORNEYS: | On behalf of the defendants-respondents, the cause was submitted on the brief of *Mark B. Hazelbaker* of *Kasieta Legal Group, LLC*, Madison, and *Mark Schroeder* of *Consigny Law Firm*, *S.C.*, Janesville.  There was oral argument by *Mark B. Hazelbaker* and *Mark Schroeder*. |

COURT OF APPEALS
DECISION
DATED AND FILED

March 14, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2022AP1196**
**2022AP1198**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2021CX1A
2021CX1

**IN COURT OF APPEALS**

---

**2022AP1196**

COUNTY OF DANE,

    PLAINTIFF-APPELLANT,

  V.

TCOB2 IRREVOCABLE TRUST,

    DEFENDANT-RESPONDENT.

---

**2022AP1198**

COUNTY OF DANE,

    PLAINTIFF-APPELLANT,

  V.

MARY JO JOHNSON,

    DEFENDANT-RESPONDENT.

---

APPEALS from orders of the circuit court for Dane County: MARIO WHITE, Judge. *Reversed and cause remanded for further proceedings*.

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

¶1    NASHOLD, J.[1]  Mary Johnson owned approximately 160 acres of land that her parents conveyed to her in a deed recorded in 2000.  In a deed recorded in 2020, Johnson conveyed portions of those 160 acres to the TCOB2 Irrevocable Trust ("the Trust").[2]  We refer to those deeds, respectively, as "the 2000 deed" and "the 2020 deed," and we refer to the deeds' corresponding transfers of land, respectively, as "the 2000 conveyance" and "the 2020 conveyance."

¶2    The County of Dane ("the County") brought enforcement actions against Johnson and the Trust, alleging that the 2020 conveyance violates Dane County's zoning and land division ordinances.  Specifically, the County alleged that the 2020 conveyance violates DANE COUNTY, WIS., ORDINANCE ("DCO") § 10.222(4)(a), because it created lots that do not meet the minimum-lot-size requirement for the property's zoning classification.[3]  The County also alleged that

---

[1] These appeals were consolidated for briefing and disposition by a July 29, 2022 order of this court pursuant to WIS. STAT. RULE 809.10(3) (2021-22), and were converted from one-judge appeals to three-judge appeals under WIS. STAT. § 752.31(3) and WIS. STAT. RULE 809.41(1).  All references to the Wisconsin Statutes are to the 2021-22 version.

[2] We refer to the respondents individually as "Johnson" and "the Trust" in their respective capacities as grantor and grantee of the 2020 conveyance, and to the respondents collectively as "Johnson" when discussing the proceedings before the circuit court and their joint arguments on appeal.

[3] Chapter 10 of the Dane County Ordinances was last updated on September 30, 2023.  All references to chapter 10 are to the 2023 version.  Chapter 75 of the Dane County Ordinances was last revised on July 31, 2021.  All references to chapter 75 are to the 2021 version.

the 2020 conveyance violates DCO § 75.17(1)(a) because it divided a parcel of land, and Johnson was thus required to, but did not, submit a certified survey map. After a bench trial, the circuit court dismissed the County's claims. The court concluded that the 2020 conveyance does not violate the ordinances, and additionally that enforcement of the ordinances is prohibited by WIS. STAT. § 66.10015(2)(e)1. and (4).[4] As we explain in more detail below, the circuit court's determinations were premised on its conclusion that the 160 acres conveyed to Johnson by the 2000 deed consisted of seven "separate legal parcels" that Johnson owned when she executed the 2020 deed. Because we conclude that the 2000 deed conveyed a single, 160-acre parcel of land to Johnson, we reverse.

## BACKGROUND

¶3    Johnson owns property in the Town of Albion, which is located in Dane County. Johnson's parents conveyed the property—a total of 160 acres—to Johnson in the 2000 deed. Johnson's parents had owned the 160 acres since 1955: they purchased the first 130 acres in 1949 and they purchased the remaining 30 acres in 1955.

¶4    In 2020, Johnson executed a deed that conveyed portions of Johnson's 160 acres to the Trust. Relevant here, the property conveyed to the Trust included a 20-acre property. Further, as a result of the 2020 conveyance, a

---

[4] WISCONSIN STAT. § 66.10015(2)(e)1. states that "no political subdivision may enact or enforce an ordinance or take any other action that prohibits a property owner from … [c]onveying an ownership interest in a substandard lot." Section 66.10015(4) states that "no political subdivision may enact or enforce an ordinance or take any other action that requires one or more lots to be merged with another lot, for any purpose, without the consent of the owners of the lots that are to be merged."

3

separate 20-acre property that remained in Johnson's possession was no longer contiguous to the rest of Johnson's property—in other words, it became an isolated, 20-acre remnant.

¶5      The County promulgates and enforces zoning and land division ordinances in the Town of Albion.  Under the County's zoning ordinances, Johnson's property was classified as FP-35, Farmland Preservation, which requires lots to be at least thirty-five acres in size.  *See* DCO § 10.222(4)(a).

¶6      After the 2020 deed was recorded with the register of deeds, the County sent a letter to Johnson's attorney identifying alleged violations of its zoning and land division ordinances.  Upon receiving no response, the County brought enforcement actions against Johnson and the Trust, seeking injunctive relief and forfeitures.  The County alleged that the 2020 conveyance violates two Dane County ordinances.  Both of the alleged violations are based on the premise that the 2020 conveyance creates two properties that are each 20 acres in size:  the property conveyed to the Trust and the remnant that Johnson still owns.  The County alleged that, as a result, the 2020 conveyance violates DCO § 10.222(4)(a), which imposes a minimum lot size of 35 acres for land zoned FP-35.  The County also alleged that the 2020 conveyance violates DCO § 75.17(1)(a), which requires a certified survey map to be prepared and submitted for approval when a parcel is divided into lots, parcels, or building sites of 35 acres or less in size.  We sometimes refer to these ordinances, respectively, as the "minimum-lot-size-ordinance" and the "certified-survey-map ordinance."[5]

---

[5] Because a portion of one of the properties that the 2020 deed purported to convey to the Trust was owned by someone other than Johnson before the 2020 conveyance, that property was
(continued)

4

¶7     Johnson moved to dismiss the County's complaint for failure to state a claim for which relief could be granted. The circuit court granted Johnson's motion, and the County appealed. We reversed and remanded, concluding that the complaint sufficiently alleged violations of the County's minimum-lot-size and certified-survey-map ordinances. *County of Dane v. Johnson*, Nos. 2021AP869 and 2021AP870, unpublished slip op. ¶15 (WI App Oct. 14, 2021).

¶8     The circuit court held a bench trial, after which it issued findings of fact and conclusions of law, again dismissing the County's claims. The court concluded that the 2000 deed conveyed, and Johnson subsequently owned, seven "separate legal parcels," which included the two 20-acre properties that are the subject of the alleged ordinance violations. As a result, the court concluded that: the 2020 conveyance did not create new lots and thus does not violate the minimum-lot-size ordinance; the 2020 conveyance "did not divide a parcel" and thus does not violate the certified-survey-map ordinance; the 2020 deed conveyed "substandard lots," which the County could not prohibit Johnson from conveying under WIS. STAT. § 66.10015(2)(e); and the definition of "parcel" used in DCO § 75.17(1)(a) requires Johnson to merge lots, in violation of § 66.10015(4). The seven "separate legal parcels" identified by the circuit court correspond to the seven tax parcels that comprised Johnson's 160-acre property.

---

not actually conveyed. The County took the position at trial and at oral argument that if that defect in the 2020 deed were corrected, and if the portion of that property that Johnson does own were conveyed to the Trust, it would result in an additional violation by creating a property approximately five acres in size. That additional, hypothetical violation is not at issue in this appeal.

¶9      The County appeals.[6]

## DISCUSSION

¶10      It is undisputed that the validity of the County's enforcement action ultimately turns on the following question:  after the 2000 conveyance and up until the 2020 conveyance, did Johnson own seven separate parcels consisting of a total of 160 acres or did she instead own a single, 160-acre parcel?  The answer to this question, in turn, depends on whether the 2000 deed conveyed to Johnson seven separate parcels or a single, 160-acre parcel.  Accordingly, we first address whether the 2000 deed conveyed seven separate parcels or one 160-acre parcel, and then we discuss in more detail the specific ordinance and statutory provisions at issue.

¶11      The circuit court concluded, and Johnson argues, that the 2000 deed conveyed seven separate parcels to Johnson.  In contrast, the County contends that, although the 160-acre property may have consisted of seven separate parcels at some point in the past, they were combined into larger parcels over time, including in 1949, 1955, and finally, in the 2000 deed, which conveyed to Johnson a single, 160-acre parcel.  As explained below, because we conclude that the 2000 deed conveyed a single, 160-acre parcel to Johnson, it follows that the 2020 deed,

---

[6] The County's briefs do not comply with WIS. STAT. RULE 809.19(8)(bm), which states that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover."  This rule was amended in 2021, *see* S. CT. ORDER 20-07 (eff. July 1, 2021), because briefs are now electronically filed in PDF format and are electronically stamped with page numbers when they are accepted for e-filing.  As our supreme court explained in amending the rule, the pagination requirement ensures that the numbers on each page of the brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief.  S. CT. ORDER 20-07.

which conveyed portions of Johnson's 160 acres to the Trust, divided a parcel and created two new lots that were each approximately 20 acres in size, which violated the minimum-lot-size and certified-survey-map ordinances. It also follows that the County's enforcement of its ordinances does not violate WIS. STAT. § 66.10015(2)(e) or (4), because the 2020 deed does not convey an interest in a "substandard lot" as that term is defined in § 66.10015(1)(e), and because the ordinances do not require Johnson to merge lots.

*I. Legal Principles Governing Review*

¶12    This appeal requires us to interpret statutes and ordinances. "[T]he interpretation of a statute or ordinance presents a question of law for our independent review." *Marquardt v. Milwaukee Cnty.*, 2000 WI App 77, ¶10, 234 Wis. 2d 294, 610 N.W.2d 496. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "We interpret ordinances using the rules of construction that we apply to statutes." *Board of Regents of Univ. of Wis. v. Dane Cnty. Bd. of Adjustment*, 2000 WI App 211, ¶14, 238 Wis. 2d 810, 618 N.W.2d 537.

¶13    This appeal also requires us to interpret deeds. We interpret deeds to ascertain the intent of the parties to the deeds. *Rikkers v. Ryan*, 76 Wis. 2d 185, 188, 251 N.W.2d 25 (1977). "Our first step in [the] construction of a deed is to examine what is written within the four corners of the deed …." *Id.* We rely on extrinsic evidence to show the parties' intent "only if we conclude there is ambiguity within the four corners of the documents." *Gilbert v. Geiger*, 2008 WI App 29, ¶10, 307 Wis. 2d 463, 747 N.W.2d 188. "If the language of the deed is

unambiguous, then its construction … is purely a question of law for the court, but when there is an ambiguity, the sense in which the words therein are used presents a question of fact." *Rikkers*, 76 Wis. 2d at 188. "Both the existence of ambiguity and the meaning of an unambiguous deed are questions of law that we review de novo." *Garrett v. O'Dowd*, 2009 WI App 146, ¶5, 321 Wis. 2d 535, 775 N.W.2d 549.

## II. The 2000 Conveyance

¶14 For the reasons that follow, we conclude that the 2000 deed unambiguously conveyed a single, 160-acre parcel to Johnson. We further conclude that, even if the 2000 deed were ambiguous, our interpretation of the deed is supported by extrinsic evidence.

¶15 The 2000 deed conveyed the following property to Johnson:

> The Northwest 1/4 of the Northeast 1/4; The Northeast 1/4 of the Northwest 1/4; The East 1/2 of the Northwest 1/4 of the Northwest 1/4; The East 1/2 of the Southwest 1/4 of the Northwest 1/4; The Southeast 1/4 of the Northwest 1/4, EXCEPT the South 264 feet of the East 660 feet thereof; The West 1/2 of the Northeast 1/4 of the Southwest 1/4, lying Northeasterly of C.T.H. "A"; All in Section 18, Township 5 North, Range 12 East, in the Township of Albion, Dane County, Wisconsin, EXCEPT from the above, land as set forth in instrument, recorded in the Dane County Register of Deeds office on December 11, 1967, in Vol. 845 of Records, page 255, as Document No. 1202468.

It is undisputed that this language from the 2000 deed contains a description of the property conveyed by reference to its "aliquot parts," which, as discussed below, is different from a metes and bounds description. An aliquot part is, "[i]n the Public Land Survey System, … a fraction of a section, esp[ecially] a half section, quarter section, half-quarter section, or quarter-quarter section, those being standard section subunits usu[ally] marked by [Public Land Survey System]

corner-markers."[7]  *Aliquot Part*, BLACK'S LAW DICTIONARY (11th ed. 2019). More generally, an aliquot part is "[a] fractional portion of a thing, which part is contained within the whole an exact number of times."  ***Id.***  Each aliquot part, then, describes a block of land as a portion of a section.  The aliquot parts in the 2000 deed are listed one after the other, beginning with "The Northwest 1/4 of the Northeast 1/4," and continuing, separated by semicolons, up to the language beginning, "All in Section 18 ...."

¶16  The use of aliquot parts is one common method of describing property.  WALTER G. ROBILLARD, BROWN'S BOUNDARY CONTROL AND LEGAL PRINCIPLES § 3.24 at 77 (7th ed. 2014) (listing "[one] of the most common forms of description" as "reference, including aliquot portion").  However, Johnson argues that, in order for property to be conveyed as a single parcel, it must be conveyed using a description by metes and bounds rather than by aliquot parts. *See Metes and Bounds*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "metes and bounds" as "[t]he territorial limits of real property as measured by distances and angles from designated landmarks and in relation to adjoining properties," and as "[t]he method of describing a tract by limits so measured,

---

[7]  The "Public Land Survey System" is

> [t]he system of surveys made using similar principles that the U.S. government — at the direction of first the Confederation Congress and then the U.S. Congress — used to survey and subdivide the continental U.S. ….  Each [survey] divides a tract into six-mile-by-six-mile squares called townships….  A regular township square is divided into 36 one-mile-by-one-mile squares called sections.  Each regular section is divided into four quarter sections, and each regular quarter section is divided into four quarter-quarter sections.

*Public Land Survey System*, BLACK'S LAW DICTIONARY (11th ed. 2019).

esp[ecially] when the descriptions of the limits are arranged as a series of instructions that, if followed, result in traveling along the tract's boundaries"). However, Johnson offers no support for this assertion, and we reject it on that basis. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (undeveloped legal arguments and "[a]rguments unsupported by references to legal authority will not be considered").

¶17    In addition to the description set forth above, the 2000 deed also lists seven "parcel identification number[s]" that identify seven separate tax parcels in the 2000 property conveyance. *See* DCO § 10.004(152) (defining "tax parcel" as "[a] parcel of land identified by a Parcel Identification Number assigned by the Dane County Property Listing Division for the purpose of assessing real property taxes"). As stated, it is the seven tax parcels listed on the 2000 deed that the circuit court identified as the seven parcels that were separately conveyed by the 2000 deed. The seven tax parcels listed on the 2000 deed correspond to the aliquot parts described in the deed, with the exception of the third aliquot part ("[t]he East 1/2 of the Northwest 1/4 of the Northwest 1/4"), which is comprised of two tax parcels. Thus, the 2000 deed lists seven tax parcels and six aliquot parts.

¶18    The parties ultimately agree on appeal that the listing of seven different tax parcels on the 2000 deed is not legally significant for purposes of this appeal and that identifying the tax parcels is not evidence of an intent to convey the corresponding parcels separately.[8]  Pursuant to WIS. STAT. § 59.43(7)(b), the

---

[8] While Johnson ultimately concedes the point, there was some equivocation in her briefing and at oral argument. Even if Johnson had not conceded the point, she has not cited legal authority to support an argument that listing the seven tax parcels on the 2000 deed reflects an

(continued)

parcel identification numbers for tax parcels must be included on a deed, "for administrative purposes only," in order for the deed to be recorded. Further, DCO § 10.004(152) states, "[t]he boundaries of a tax parcel may or may not coincide with a lot, lot of record or zoning parcel." Accordingly, the fact that the property is identified in the 2000 deed as being comprised of seven tax parcels has no bearing on whether the deed conveyed to Johnson a single parcel or seven separate parcels.

¶19    Johnson advances three primary grounds in support of her argument that the 2000 deed conveyed seven different parcels of land to her:  (1) that each of the seven parcels that Johnson identifies was conveyed at some point in time before 2000 as an individual parcel; (2) that these identified parcels are, with one exception, separated from each other by semicolons in the 2000 deed's description; and (3) that construing the 1949, 1955, or 2000 deed as consolidating parcels impermissibly limits Johnson's free use of her property.  Johnson's arguments are unpersuasive.

¶20    As to Johnson's first ground, it is not disputed that the seven different parcels identified by Johnson were each, at times before 2000, conveyed between various parties as individual parcels.  This is inconsequential, however, because both parties agree that a deed may consolidate multiple parcels into one parcel.

---

intent to convey those seven separate tax parcels separately. We therefore need not address the issue in any case. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

11

¶21    Second, the aliquot parts, separated by semicolons, do not describe seven separate parcels. Critically, the 2000 deed's description lists only *six* aliquot parts separated by semicolons. Furthermore, one of these is a 20-acre aliquot part, which is comprised of two of the purported parcels that Johnson identifies as having been individually conveyed in the past and again individually conveyed in the 2000 deed. This 20-acre aliquot part is described as "[t]he East 1/2 of the Northwest 1/4 of the Northwest 1/4." Listing this as one aliquot part in the 2000 deed undermines Johnson's position that the 2000 deed conveyed these 20 acres as two separate parcels and conveyed a total of seven parcels.

¶22    In addition, the 2000 deed refers to the entire 160 acres as a single property. After describing the property being conveyed, the 2000 deed states, referring to the entire 160 acres, "This is homestead property." The deed also reserves for Johnson's parents "a life use of the farm buildings and the 5 acres immediately adjacent thereto *of the above described property* to themselves and to each of them separately." (Emphasis added.) If, as Johnson argues, the parties' intent was to convey seven separate parcels, the 2000 deed logically would have identified the five acres in which a life estate was reserved as part of one of those individual parcels rather than as a part of the entire 160 acres.

¶23    This same reasoning also applies to the exception listed after the last semicolon in the 2000 deed's description of the property. Recall that, after listing the component aliquot parts of the 160 acres, the 2000 deed states, "All in Section 18, Township 5 North, Range 12 East, in the Township of Albion, Dane County, Wisconsin, EXCEPT from the above, land as set forth in instrument, recorded in the Dane County Register of Deeds office on December 11, 1967, in Vol. 845 of Records, page 255, as Document No. 1202468." This language excludes property that is described in a different deed recorded in 1967, and lists

12

this property *as an exception to the entire 160 acres*. Again, if the intent of the parties was to convey separate parcels, then what is listed in the 2000 deed as a single exception to the entire 160 acres logically would have been described as individual exceptions to the applicable individual parcels being conveyed.

¶24 We likewise reject Johnson's argument that interpreting the 1949, 1955, or 2000 conveyances as consolidating parcels requires reading a restriction into the deed. In support of her argument, Johnson cites ***Buehrens v. Schave***, 2020 WI App 75, ¶5, 394 Wis. 2d 772, 951 N.W.2d 640, and ***Mueller v. Schier***, 189 Wis. 70, 205 N.W. 912 (1925), for the proposition that such a restriction must be clearly and unambiguously stated. However, both of those opinions address instances in which deeds contained restrictive covenants. ***Buehrens***, 394 Wis. 2d 772, ¶¶1, 5, 9; ***Mueller***, 189 Wis. 70. In contrast, here the restriction that Johnson identifies—"[a] restriction forbidding a person from selling their land without hiring a surveyor, preparing a survey map, and obtaining review of the Town and County"—comes from the certified-survey-map ordinance, not the 2000 deed. As the County points out, the 2000 deed contains no restrictions on the use of property. For these reasons, ***Buehrens*** and ***Mueller*** have no bearing on our interpretation of the 2000 deed.

¶25 In sum, the 2000 deed unambiguously conveyed a single, 160-acre parcel of land. We could end our analysis at this point. However, we further observe that, even if the deed were ambiguous, undisputed extrinsic evidence supports our conclusion that the deed conveyed a single, 160-acre parcel in the following three respects.

¶26 First, the undisputed evidence at trial shows that land in Dane County is commonly described in deeds using amalgamations of smaller

13

component parts, as occurred in the 2000 deed. Specifically, at trial, Daniel Frick, the Dane County Surveyor, testified that after Dane County was surveyed as part of the Public Land Survey System, it has been common practice by those drafting deeds to describe individual parcels of property as amalgamations of component aliquot parts.[9] Notably, despite the County's reliance on Frick's testimony on appeal, Johnson does not contest this evidence or argue that it cannot be considered.

¶27 Other undisputed portions of Frick's testimony also undermine a related assertion by Johnson that we have already rejected as unsupported. That assertion is that conveyance of a single property could have been accomplished only through a metes and bounds description in the 2000 deed. At trial, Frick testified that describing property using metes and bounds is more accurate and thus preferred. However, Frick also testified that it is not commonplace to describe property using metes and bounds because of the additional costs generated by having to order a survey to determine a property's boundaries. He testified that "it is quite common that that's not done because of the expense that's incurred, and it's common practice to transfer" property using "the aliquot parts as written."[10] Further, Frick testified that a single parcel could be conveyed by

---

[9] Frick testified that, as the Dane County Surveyor, he maintains the public land survey system for the County, reviews certified survey maps, and reviews deeds when title issues arise, and that he is "aware of the practices that are followed regarding descriptions of parcels, conveyances, and transferences of parcels."

[10] Supporting Frick's unrebutted testimony, the 2008 Dane County Plat Book, which Johnson attached to her trial brief, states that "Metes and Bounds descriptions are usually used for odd[-]shaped tracts of land that cannot be easily described using the PLSS [Public Land Survey System] description. You can describe any tract using Metes and Bounds, but it's simpler to use [the] PLSS [description] if possible."

describing the parcel using either metes and bounds or aliquot parts. Frick's testimony on this subject, which is not challenged on appeal, shows that the use of aliquot parts to describe larger pieces of property is commonly done to minimize transaction costs and as a matter of administrative convenience because land across the state was originally divided and described using sections and their aliquot parts.

¶28    Second, it is not disputed that a survey of Johnson's property that was performed in 2002, which Frick characterized as a "depiction of the [2000] deed," described the property as a single, 160-acre parcel: *i.e.*, "Parcel A."

¶29    Third, it is also undisputed that Johnson treated the 160 acres as a single parcel. It had a single, unifying use—as a farm, with farm buildings and a single residence—and the layout of the farm does not reflect an understanding that it was comprised of separate component parcels. As noted by the County at oral argument and not disputed by Johnson, an aerial image of the farm from April 2020 shows one of the farm buildings straddling the boundary between two of the component aliquot parts, which, pursuant to the 2020 deed, would be owned by separate entities. As the County further noted at oral argument, building on the boundary line between two of the aliquot parts listed in the 2000 deed shows an understanding that the 2000 deed conveyed a single, 160-acre parcel of land.

¶30    For all these reasons, we conclude that the 2000 deed conveyed, and Johnson subsequently owned, a single, 160-acre parcel. We now discuss why it follows that the 2020 conveyance violates the County's minimum-lot-size and certified-survey-map ordinances, and that the County's enforcement of these ordinances does not violate WIS. STAT. § 66.10015(2)(e) or (4)(a).

*III. Ordinance Violations*

¶31    The County alleges that the 2020 conveyance violates two different ordinances:  DCO §§ 10.222(4)(a) and 75.17(1)(a).  As we now explain, because we have concluded that the 2000 deed conveyed a single, 160-acre parcel, it follows that the 2020 conveyance violates both ordinances.

*A.  DCO § 10.222(4)(a):  the minimum-lot-size ordinance*

¶32    DCO § 10.222 establishes the FP-35 General Farmland Preservation Zoning District, for which § 10.222(4)(a) imposes a minimum lot size:  "All lots created in the FP-35 zoning district must be at least thirty-five (35) acres in area, excluding public rights-of way."  DCO § 10.004(89) defines a "lot" as follows:

> A parcel of land occupied or intended to be occupied by one principal building and its accessory buildings or uses, except for commercial zoning districts.  A parcel or tract of land that is defined by metes and bounds, certified survey, recorded subdivision plat, or other means of description recorded with the Register of Deeds and legally separated from other lots by such description.…

¶33    As noted, the 2020 deed transferred one 20-acre parcel of land to the Trust, and the conveyance of property to the Trust resulted in a remaining 20-acre parcel of land in Johnson's possession that was no longer contiguous with the rest of Johnson's property.  The County alleges that the creation of these two 20-acre parcels violates DCO § 10.222(4)(a).  We agree.

¶34    Notably, Johnson does not argue that these two 20-acre properties are not "lots" under DCO § 10.004(89).  Instead, she argues that these "lots" were not created by the 2020 deed because they existed prior to that deed and were conveyed as distinct parcels in the 2000 deed.  However, we have already explained that the 2000 deed conveyed a single, 160-acre parcel of land to Johnson

16

rather than separate lots or parcels. It follows from this that the two 20-acre lots at issue were created by the 2020 deed, and that the 2020 conveyance violates DCO § 10.222(4)(a).

### B. DCO § 75.17: the certified-survey-map ordinance

¶35 Under DCO § 75.17(1)(a), a certified survey map must be prepared and submitted when a conveyance results in a "land division":

> Any land divider who shall divide land located in an unincorporated area of Dane County which results in a land division shall prepare a certified survey map in accordance with section 236.34 of the Wisconsin Statutes and all of the requirements in this chapter which may apply. All certified survey maps shall be submitted to the [the Dane County Zoning and Land Regulation Committee] for approval and shall, after approval, be recorded in the office of the Dane County Register of Deeds.

"Land division," in turn, is defined by DCO § 75.06(6) as:

> A division of a parcel of land which is not a subdivision and which creates less than five lots, parcels or building sites of 35 acres each or less in area, regardless of whether the act of division also creates one or more lots, parcels or building sites on 35 acres or more.

Further, "parcel," as used in this definition of "land division," means: "[c]ontiguous lands under the control of a subdivider or subdividers not separated by streets, highways or railroad rights-of-way." Sec. 75.06(9).

¶36 Again, the relevant parcels are the two 20-acre parcels created by the 2020 deed—one that was conveyed to the Trust, and one that remained in Johnson's possession but was no longer contiguous with the rest of Johnson's property. The County alleges that the 2020 deed created these parcels, thereby dividing Johnson's original 160-acre parcel, resulting in a "land division" under

17

DCO § 75.06(6) that required a certified survey map pursuant to the certified-survey-map ordinance. We agree.

¶37 Johnson argues that there was no land division because prior to the 2020 conveyance Johnson's 160 acres consisted of seven separate parcels, including the two 20-acre parcels that the County alleges were created in violation of the certified-survey-map ordinance. Again, this argument is defeated by our conclusion that the 2000 deed conveyed a single, 160-acre parcel of land to Johnson. Those 160 acres constituted a single "parcel" under DCO § 75.06(9): they were contiguous lands under Johnson's control.[11] It thus follows that the 2020 deed divided that parcel and therefore resulted in a land division. Accordingly, Johnson was required to submit a certified survey map. Johnson did not do so, and for this reason the 2020 conveyance violates DCO § 75.17(1)(a).

*IV. WISCONSIN STAT. § 66.10015*

¶38 Johnson argues that WIS. STAT. § 66.10015(1)(e) and (4) prohibit the County from enforcing the ordinances at issue. We conclude that neither statutory provision applies.

---

[11] At oral argument, and only after the issue was first raised by the County, Johnson argued that Johnson's 160-acre property was not a "parcel," and thus no certified survey map was required, because Johnson was not a "subdivider." *See* DCO § 75.06(9) (defining "parcel" as "[c]ontiguous lands under the control of a subdivider or subdividers"). We do not address this argument because Johnson did not raise the issue in her respondent's brief, depriving the County of a fair opportunity to address it in briefing. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 493, 588 N.W.2d 285 (Ct. App. 1998) (we need not address issues raised for the first time at oral argument).

18

### A. WISCONSIN STAT. § 66.10015(2)(e)

¶39 As noted, WIS. STAT. § 66.10015(2)(e) states that "no political subdivision may enact or enforce an ordinance or take any other action that prohibits a property owner from … [c]onveying an ownership interest in a substandard lot." A "substandard lot" is defined as "a legally created lot or parcel that met any applicable lot size requirements when it was created, but does not meet current lot size requirements." Sec. 66.10015(1)(e).

¶40 Of the two 20-acre parcels that the County alleges were created in violation of the minimum-lot-size and certified-survey-map ordinances, Johnson conveyed an ownership interest in only one of them; the other remained in Johnson's possession. Therefore, whether WIS. STAT. § 66.10015(2)(e) applies depends on whether the 20-acre parcel that Johnson conveyed was a "substandard lot."

¶41 Johnson argues that because Johnson's property consisted of seven separate parcels at the time of the 2020 deed, including the 20-acre parcel conveyed to the Trust, that parcel was a substandard lot that the County could not prohibit Johnson from conveying. The County counters that because Johnson originally owned a single, 160-acre parcel, the 20-acre parcel at issue here was created by the 2020 deed and the 20-acre parcel is thus not a "substandard lot" and WIS. STAT. § 66.10015(2)(e) therefore does not apply. We agree with the County. Because we have concluded that the 2000 deed conveyed to Johnson a single, 160-acre parcel rather than seven separate parcels, it follows that the 20-acre parcel that Johnson conveyed to the Trust was created by the 2020 deed. Therefore, the 20-acre parcel did not meet the applicable lot size requirements in

19

place when it was created in 2020 and is not a "substandard lot." For these reasons, § 66.10015(2)(e) is inapplicable here.

### B. WISCONSIN STAT. § 66.10015(4)

¶42     WISCONSIN STAT. § 66.10015(4) states that "no political subdivision may enact or enforce an ordinance or take any other action that requires one or more lots to be merged with another lot, for any purpose, without the consent of the owners of the lots that are to be merged."

¶43     "Merger" has a specially defined meaning, which we must use in interpreting WIS. STAT. § 66.10015(4). *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "Merger generally requires the combination of two or more contiguous lots of substandard size that are held in common ownership in order to meet the minimum-square-footage requirements of a particular zoned district." 3 RATHKOPF'S THE LAW OF ZONING AND PLANNING § 49:16 (4th ed.); *see also, e.g.*, *Town of Rhine v. Bizzell*, 2008 WI 76, ¶¶48-52, 311 Wis. 2d 1, 751 N.W.2d 780 (relying on zoning treatises).

¶44     As noted, DCO § 75.06(9) defines "parcel" as "[c]ontiguous lands under the control of a subdivider or subdividers not separated by streets, highways or railroad rights-of-way." The circuit court concluded that this definition violates WIS. STAT. § 66.10015(4) because, according to the court, it "unlawfully combines or merges lots for the purpose of regulating the conveyance of … land[]." At oral argument, however, Johnson clarified that she is not arguing that DCO § 75.06(9)'s definition of "parcel," on its face, is preempted by § 66.10015(4). Rather, her argument is that the County's enforcement of its

20

ordinances results in a merger of Johnson's lots, in violation of § 66.10015(4), because the 2000 deed conveyed, and she owned, "seven lots … [that] were created over many decades and were never consolidated." For reasons already explained regarding the 2000 conveyance of a single parcel, we reject this argument.

¶45    Because Johnson's property was comprised of one parcel rather than seven, the County's enforcement of its ordinances does not require the merger of lots. Accordingly, WIS. STAT. § 66.10015(4) does not apply.

## CONCLUSION

¶46    For these reasons, we reverse the circuit court's orders and remand for further proceedings consistent with this opinion.

*By the Court.*—Orders reversed and cause remanded for further proceedings.